U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 2 9 2024

TONY R. MOORE, CLERK
BY KW DEPUTY

Case Document 1 Filed 02/29/24 1 of 164 PageID #: 1

Edosa Addley Festus Ogbebor
508 Crawford Street
Lafayette, LA, 70506
415-754-7572
edosaogbebor@icloud.com
1/29/24

24-cv-0313 Sec P

800 Lafayette St #2100
Lafayette, LA, 70501

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **EDOSA ADDLEY FESTUS OGBEBOR,**<br>Plaintiff,<br>**v.**<br>**CITY OF LAFAYETTE,**<br>*a municipal corporation,*<br>**UNIVERSITY OF LOUISIANA AT LAFAYETTE,**<br>*a public university,*<br>**15TH JUDICIAL DISTRICT COURT,**<br>*a government entity,*<br>**DISTRICT ATTORNEY'S OFFICE FOR THE WESTERN DISTRICT OF LOUISIANA,**<br>*a government entity,*<br>**PUBLIC DEFENDER'S OFFICE FOR THE WESTERN DISTRICT OF LOUISIANA,**<br>*a government entity,*<br>Defendants. | Case No.:<br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, EXCESSIVE FORCE, UNLAWFUL SEARCH AND SEIZURE VIOLATIONS OF DUE PROCESS RIGHTS, FALSIFICATION OF POLICE REPORTS, FAILURE TO INTERVENE IN INSTANCES OF MISCONDUCT, PROSECUTORIAL MISCONDUCT, AND UNLAWFUL ARREST**<br>**DATE:**<br>**TIME:**<br>**DEPT:**<br>Judge:<br>Dept:<br>Action Filed: 02/27/2024<br>Trial Date: |

Case Document 1 Filed 02/29/24 2 of 164 PageID #: 2

## COMPLAINT

**To the Honorable Judges of the Western District 5th Circuit Court:**

## INTRODUCTION

I present before this Court a complaint under 42 U.S.C. § 1983, alleging egregious violations of the constitutional, civil, and state law rights of Mr. Edosa Addley Festus Ogbebor ("Mr. O"). The Defendants include law enforcement officers, the City of Lafayette Louisiana, University of Louisiana at Lafayette, University of Louisiana at Lafayette Police Department, Lafayette Police Department, Lafayette Louisiana Public Defenders Office, the 15th Judicial District Court, and the Lafayette Louisiana District Attorney's office. These violations, occurring within this Court's jurisdiction, warrant a comprehensive investigation and subsequent redress.

## JURISDICTION AND VENUE

This lawsuit is initiated under the auspices of 42 U.S.C. § 1983[1], in defense of Mr. O's rights as safeguarded by the First, Fourth, Fifth, Sixth, and Fourteenth

[1] 42 U.S.C. § 1983 provides a federal cause of action for violations of individuals' constitutional rights by state actors.

Case Document 1 Filed 02/29/24 3 of 164 PageID #: 3

Amendments of the United States Constitution, alongside pertinent State of Louisiana laws. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for federal question jurisdiction and 28 U.S.C. § 1343(3) for civil rights claims. Additionally, pursuant to 28 U.S.C. § 1367, this Court holds supplemental jurisdiction over related state law claims, which are interwoven with the federal allegations and arise from an identical set of facts[2]^1.

**Personal Jurisdiction and Venue**

The Defendants, all within this Court's geographical reach, fall under its personal jurisdiction. Venue is proper in the Western District of Louisiana, as per 28 U.S.C. § 1391(b), since the incidents underpinning this complaint unfolded within this district, and all Defendants either reside or are based here, fulfilling the legal criteria for venue selection[3].

**Defendants' Actions Under Color of Law**

Throughout the relevant time frame, the Defendants acted under the color of state law, engaging in conduct that purportedly fulfilled their official duties.

---

2 *See* 28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) (establishing the doctrine of supplemental jurisdiction).

3 *See* 28 U.S.C. § 1391(b); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) (discussing principles governing venue choice).

Case Document 1 Filed 02/29/24 4 of 164 PageID #: 4

These actions, however, stand in violation of Mr. O's rights under federal and state law. It is on this basis, supported by the authority of 42 U.S.C. § 1983, that we assert the Defendants are liable for the constitutional breaches alleged herein[4].

## I. PARTIES INVOLVED:

- Plaintiff Mr. Edosa Ogbebor (hereinafter referred to as "Mr. O"), whose contact information is provided above.

***Defendant Officers***

- Law enforcement officers involved in the incidents, including but not limited to Officer Kenneth Hardy (hereinafter referred to as "Defendant K. Hardy", "K. Hardy", or "Hardy"), Officer Tyler Daigle (hereinafter referred to as "Defendant Daigle", or "Daigle" ), Officer Jacob Ortego (hereinafter referred to as "Defendant Ortego", or "Ortego'), Officer David Latisser (hereinafter referred to as "Defendant Latisser", or "Latisser"), Officer Earnest Payne (hereinafter referred to as "Defendant Payne", or "Payne"), Officer Wayne Whatley (hereinafter referred to as "Defendant W. Whatley", or "Whatley"), Officer Cody Hutchinson (hereinafter referred to as "Defendant Hutchinson", or "Hutchinson"), and other officers as applicable.[5]

---

4 *See* 42 U.S.C. § 1983; *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (clarifying the application of § 1983 to actions performed under the color of state law).

5 The officers mentioned here, Officer K Hardy, Officer Latisser, and Officer Payne, are named as defendants in this complaint due to their alleged involvement in the incidents described

Case Document 1 Filed 02/29/24 5 of 164 PageID #: 5

***Defendant Municipality***

- The city of Lafayette Louisiana (hereinafter referred to as "City of Lafayette" or "Lafayette Consolidated Government"), responsible for the actions and policies of its law enforcement officers.[6]

***Defendant Municipality City Officials***

- City Attorney Greg Logan (hereinafter referred to as "Defendant Logan", or "Logan")
- Assistant City Attorney Mark Stipe (hereinafter referred to as "Defendant Stipe", or "Stipe")

***Defendant University***

- University of Louisiana at Lafayette, (hereinafter referred to as "University of Louisiana at Lafayette"), responsible for actions that occurred on its campus and responsible for the actions and policies of its law enforcement officers in 2008.[7]

- Jeff Lavergne (hereinafter referred to as "Defendant Lavergne", "Supervisor Lavergne", "Shift Commander Lavergne", or "Lavergne"), the Shift

---

6 As a state entity, the city of Lafayette may be held responsible for the actions and policies of its law enforcement officers under certain circumstances.

7 University of Louisiana at Lafayette is included as a party in this complaint because some of the alleged incidents occurred on its campus in 2008, potentially implicating the institution.

Case Document 1 Filed 02/29/24 6 of 164 PageID #: 6

Commander at University of Louisiana at Lafayette in charge of law enforcement officers in 2008.

***Defendant Police Departments***

- University of Louisiana at Lafayette Police Department, (hereinafter referred to as "University of Louisiana at Lafayette Police Department", or "ULPD"), responsible for actions that occurred on its campus and responsible for the actions and policies of its law enforcement officers in 2008.

- Lafayette Police Department, (hereinafter referred to as "Lafayette Police Department", or "LPD").

***Defendant Public Defenders Office***

- The public defenders office, responsible for representing Mr. O during legal proceedings.[8]

***Defendant Public Defender***

- Chris Richard (hereinafter referred to as "Defendant Counsel Richard", "Defendant Richard", or "Richard"), an attorney from the Public Defender's

[8] The public defenders office is named as a party due to its role in representing Mr. O during legal proceedings related to the incidents in question.

Case Document 1 Filed 02/29/24 7 of 164 PageID #: 7

Lafayette Parish office responsible for representing Mr. O during legal proceedings in 2009.[9]

***Defendant District Court***

- The 15th Judicial District Court Lafayette Parish Courthouse, (hereinafter referred to as "15th Judicial District Court"), responsible for overseeing legal proceedings related to Mr. O's case.[10]

***Defendant District Attorneys***

- Assistant District Attorney Don Landry (hereinafter referred to as "Defendant ADA Landry", "Landry", or "Defendant City District Attorney Landry"), the Assistant District Attorney from the DA's office responsible for prosecuting Mr. O in 2009.[11]

- City District Attorney Don Landry (hereinafter referred to as "Defendant City DA Landry", "Defendant ADA Landry", "Defendant Landry", or "Landry"), the City District Attorney from the DA's office responsible for prosecuting Mr. O in 2021 - 2022.

---

[9] Chris Richard, an attorney from the Public Defender's Lafayette Parish office is named as a party due to his role in representing Mr. O during legal proceedings in 2009 related to the incidents in question.

[10] The 15th Judicial District Court is included as a party because it oversaw legal proceedings related to Mr. O's case and may have some responsibility regarding the alleged violations.

[11] District Attorney Don Landry, the Assistant District Attorney from the DA's office is named as a party due to his role in prosecuting Mr. O in 2009, during legal proceedings related to the incidents in question.

Case Document 1 Filed 02/29/24 8 of 164 PageID #: 8

- District Attorney Chris Richard (hereinafter referred to as "Defendant ADA Richard", "Defendant Richard", or "Richard"), the Assistant District Attorney from the DA's office responsible for prosecuting Mr. O in 2022.[12]

***Defendant District Attorney's Office***

- The District Attorney's (DA) office, (hereinafter referred to as "District Attorney's Office", "DA's Office", "Lafayette, Louisiana District Attorney's Office"), which handled the prosecution of Mr. O.[13]

## II. FACTUAL ALLEGATIONS: DETAILED DESCRIPTION OF INCIDENTS:

### A. 2008 Incident at Defendant University of Louisiana at Lafayette: Comprehensive Violations Over Two Days

#### Day 1: August 20, 2008 - Initial Confrontation and Threats

On the peaceful evening of August 20, within the Defendant University of Louisiana at Lafayette campus, Mr. O encountered an unwarranted and aggressive approach by Officer Defendant K. Hardy. This encounter, devoid of any legitimate cause, quickly escalated as Officer Defendant K. Hardy, without justification, accused Mr. O of being unlawfully present and demanded he cease using his cellphone, accompanied by a distressing threat to Mr. O's future.

---

[12] District Attorney Don Landry, the Assistant District Attorney from the DA's office is named as a party due to his role in prosecuting Mr. O in 2009, during legal proceedings related to the incidents in question.

[13] The district attorney's office is named as a party because it was responsible for prosecuting Mr. O and may have involvement in the matters raised in this complaint.

Case Document 1 Filed 02/29/24 9 of 164 PageID #: 9

This initial confrontation not only set the stage for subsequent rights violations but also blatantly disregarded the principles of respectful and reasonable interaction between law enforcement and civilians, starkly contrasting with the expectations set forth in *Graham v. Connor*[14], which mandates that the use of force be objectively reasonable.

**Day 2: August 21, 2008 - Campus Escalation and Excessive Use of Force:**

The following day's events further exemplified the disregard for Mr. O's constitutional rights. During a lunch outing on Defendant University of Louisiana at Lafayette campus with his then-girlfriend, Mr. O was once again subjected to unwarranted police attention. As officers approached their location, no verbal command was issued; however, the situation rapidly escalated when Mr. O, in a bid to avoid confrontation based on the previous day's experience, started his vehicle and began to leave. At this juncture, an officer, identified as part of the group on bicycles, recklessly jumped behind of Mr. O's vehicle as he drove away, aiming his service pistol at both Mr. O and his then-girlfriend. Mr. O, driven by a justified fear for their lives, was forced to flee the scene. This action by the officer, aiming a weapon without cause, constitutes an excessive and

---

[14] **Excessive Force and Objective Reasonableness: A Critical Examination:** *See Graham v. Connor*, 490 U.S. 386 (1989). This landmark decision by the Supreme Court asserts that all claims of excessive force during an arrest, investigatory stop, or other forms of seizure are to be analyzed under the Fourth Amendment's "objective reasonableness" standard, without regard to the officers' underlying intent or motivation.

Case Document 1 Filed 02/29/24 10 of 164 PageID #: 10

unwarranted use of force, directly contravening established legal standards for law enforcement conduct as outlined in *Graham v. Connor*[15] and *Tennessee v. Garner*.[16] The absence of any lawful order prior to this escalation further underscores the officers' failure to adhere to procedural norms and respect for civilian safety.

**Day 2: August 21, 2008 - Home Incident and Subsequent Surrender:**

The situation intensified later that evening when officers, without Mr. O's presence, arrived at his residence, informing his mother of their intent to locate him. Upon learning of this from his mother, Mr. O, in an act of compliance and in an attempt to resolve the misunderstanding, returned home. Upon arrival, he was met by officers who, without issuing any directive or opportunity for Mr. O to engage or comply voluntarily, one officer yelled "he's resisting" and all four possibly even five officers present, tackled him to the concrete ground. During this encounter, one officer egregiously applied knee pressure to Mr. O's spinal cord, a use of force that was unnecessary and potentially crippling. Mr. O's

---

[15] **Excessive Force and Objective Reasonableness: A Critical Examination:** *See Graham v. Connor*, 490 U.S. 386 (1989). This landmark decision by the Supreme Court asserts that all claims of excessive force during an arrest, investigatory stop, or other forms of seizure are to be analyzed under the Fourth Amendment's "objective reasonableness" standard, without regard to the officers' underlying intent or motivation.

[16] **The Unconstitutionality of Deadly Force Against Unarmed Suspects:** *See Tennessee v. Garner*, 471 U.S. 1 (1985). This pivotal ruling establishes that the use of deadly force to prevent an unarmed suspect from fleeing is unconstitutional, unless there's a strong belief that the suspect poses a serious threat of harm to others or the officer. The case emphasizes the need for proportionality in the use of force by law enforcement.

Case Document 1 Filed 02/29/24 11 of 164 PageID #: 11

whispered plea to the only black officer present, "Damn you too, huh?" underscores the betrayal and unjust treatment he felt, highlighting the officers' disregard for the basic principles of humanity and equal protection under the law.

This use of excessive force, particularly in a situation where Mr. O posed no threat and was in the process of surrendering, directly contravenes the standards established in *Graham v. Connor*[17] and raises significant concerns under *Tennessee v. Garner, 471 U.S. 1 (1985)*[18], which holds that the use of deadly force to prevent the escape of an unarmed felon is unconstitutional.

### Subsequent Coerced Legal Proceedings

Compounding these physical violations, Mr. O was subjected to a coerced plea deal under the threat of incarceration, a process marred by the absence of credible evidence, proper arrest procedure, and a blatant disregard for the due

[17] **Excessive Force and Objective Reasonableness: A Critical Examination:** *See Graham v. Connor*, 490 U.S. 386 (1989). This landmark decision by the Supreme Court asserts that all claims of excessive force during an arrest, investigatory stop, or other forms of seizure are to be analyzed under the Fourth Amendment's "objective reasonableness" standard, without regard to the officers' underlying intent or motivation.

[18] **The Unconstitutionality of Deadly Force Against Unarmed Suspects:** *See Tennessee v. Garner*, 471 U.S. 1 (1985). This pivotal ruling establishes that the use of deadly force to prevent an unarmed suspect from fleeing is unconstitutional, unless there's a strong belief that the suspect poses a serious threat of harm to others or the officer. The case emphasizes the need for proportionality in the use of force by law enforcement.

Case Document 1 Filed 02/29/24 12 of 164 PageID #: 12

process rights safeguarded by the Sixth Amendment.[19] The pressure to accept a plea, coupled with a lack of effective assistance as required by *Strickland v. Washington*[20], reflects a judicial process that failed to uphold the principles of fairness and justice.

### Legal Misrepresentation and Fabrication of Evidence

Furthermore, the misrepresentation of the situation by law enforcement, including the fabrication of witness statements and evidence, underscores a violation of *Brady v. Maryland*[21], which mandates the disclosure of all exculpatory evidence. The manipulation of judicial proceedings against Mr. O not only questions the integrity of the legal process but also suggests a violation of *Giglio v. United States*[22], emphasizing the need for prosecutorial honesty.

---

19 **Sixth Amendment to the United States Constitution.** This amendment guarantees critical rights to criminal defendants, including the right to a speedy trial, the right to a public trial, the right to an impartial jury, the right to be informed of the nature and cause of the accusations, the right to confront witnesses, the right to have compulsory process for obtaining witnesses, and the right to assistance of counsel.

20 **The Fundamental Right to Fair Legal Representation:** *See Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court introduced a two-pronged test to evaluate the effectiveness of counsel in criminal cases, affirming the Sixth Amendment right to competent legal representation. Defendants must show that their counsel's performance was deficient and that this deficiency resulted in prejudicial harm to their case.

21 **Mandatory Disclosure of Exculpatory Evidence to Ensure Justice:** *See Brady v. Maryland*, 373 U.S. 83 (1963). This seminal ruling requires the prosecution to disclose all exculpatory evidence to the defense. Exculpatory evidence is any material that might exonerate the defendant or reduce their sentence, ensuring that the trial is fair and the verdict is just.

22 **Prosecutorial Duty to Disclose Evidence Affecting Witness Credibility:** *See Giglio v. United States*, 405 U.S. 150 (1972). Building on Brady v. Maryland, this Supreme Court case mandates that the prosecution must also disclose evidence that could impeach the credibility of its witnesses, including any agreements for leniency or immunity in exchange for testimony. This is crucial for the defense to effectively challenge the reliability of prosecution witnesses.

Case Document 1 Filed 02/29/24 13 of 164 PageID #: 13

**Conclusion: A Call for Accountability and Reform**

The incidents spanning August 20 and 21, 2008, collectively depict a grave miscarriage of justice against Mr. O, characterized by a series of constitutional rights violations. These events underscore the urgent need for a reevaluation of law enforcement practices and judicial processes to prevent the recurrence of such egregious breaches of legal and ethical standards.

**B. Second Arrest - Misapplication of Law and Infringement of First Amendment Rights (April 18, 2021):**

On April 18, 2021, in a disconcerting episode that vividly illustrates an overreach by law enforcement, Officer Defendant Latisser and Officer Defendant Payne responded to a complaint stemming from Mr. O's engagement in a constitutionally protected activity. Mr. O, utilizing a mini megaphone, was peacefully expressing his views, an act squarely within his First Amendment rights as affirmed in *Brandenburg v. Ohio, 395 U.S. 444 (1969)*[23], which safeguards the right to free speech and assembly, particularly in public forums.

---

23 **Brandenburg v. Ohio: Free Speech Protection:** *See Brandenburg v. Ohio*, 395 U.S. 444 (1969) - Establishes the principle that free speech is protected unless it is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

Case Document 1 Filed 02/29/24 14 of 164 PageID #: 14

The officers' actions, particularly the issuance of a court summons under the pretext of disturbing the peace for Mr. O's use of the megaphone, and the misleading characterization of the megaphone as a weapon, represent a troubling misuse of legal authority. This act directly contravenes the principles set forth in *Franks v. Delaware, 438 U.S. 154 (1978)*[24], which demands accuracy and truthfulness in legal proceedings and documentation. The misclassification of a peaceful protest tool as a weapon not only distorts the factual basis of the complaint but also potentially chills the exercise of First Amendment freedoms, echoing concerns highlighted in *Lozman v. City of Riviera Beach, Florida, 568 U.S. 115 (2013)*[25].

The provision of legal advice to Mr. O's neighbor by Officer Defendant Latisser, aimed at facilitating the filing of a Temporary Restraining Order (TRO) based on the peaceful exercise of speech, further illustrates an alarming disregard for constitutional protections. This action, coupled with the wrongful prosecution based on a distorted representation of peaceful protest, underscores a clear violation of Mr. O's rights as outlined in *United States v. Grace, 461 U.S. 171*

---

24 **Franks v. Delaware: Truthfulness in Legal Proceedings:** *See Franks v. Delaware*, 438 U.S. 154 (1978) - Requires accuracy and truthfulness in the affidavit supporting a search warrant, providing a mechanism for challenging the veracity of a warrant affidavit.

25 **Lozman v. City of Riviera Beach: Protection Against Retaliatory Arrests:** *See Lozman v. City of Riviera Beach, Florida*, 568 U.S. 115 (2013) - Addresses the issue of retaliatory arrest against an individual for exercising First Amendment rights, emphasizing protections against government retaliation for protected speech.

Case Document 1 Filed 02/29/24 15 of 164 PageID #: 15

*(1983)*[26], which reaffirms the right to peaceful assembly and protest on public property.

Moreover, the potential invocation of qualified immunity by the officers involved cannot obfuscate the evident overstep and misconduct demonstrated in this instance. The framework provided by *Saucier v. Katz, 533 U.S. 194 (2001)*[27], and further elaborated in *Pearson v. Callahan, 555 U.S. 223 (2009)*[28], clarifies the conditions under which qualified immunity applies, emphasizing that it does not shield officers from accountability for actions that infringe clearly established statutory or constitutional rights.

This incident, therefore, not only calls into question the application of "disturbing the peace" charges in a manner that infringes upon Mr. O's First Amendment rights but also highlights the necessity for law enforcement to adhere to constitutional limits as delineated in *City of Houston v. Hill, 482 U.S. 451*

26 **United States v. Grace: Public Forum Free Speech Rights:** *See United States v. Grace*, 461 U.S. 171 (1983) - Affirms the right to engage in peaceful protest and free speech activities on public property, underscoring the public forum doctrine.

27 **Saucier v. Katz: Qualified Immunity Standard:** *See Saucier v. Katz*, 533 U.S. 194 (2001) - Establishes the two-prong test for qualified immunity, focusing on whether a constitutional right was violated and whether that right was clearly established at the time of the conduct.

28 **Pearson v. Callahan: Flexibility in Qualified Immunity Analysis:** *See Pearson v. Callahan*, 555 U.S. 223 (2009) - Provides courts with discretion to grant qualified immunity without first determining whether a constitutional violation occurred, provided that the right in question was not clearly established.

Case Document 1 Filed 02/29/24 16 of 164 PageID #: 16

*(1987)*[29]. The misuse of legal authority to suppress lawful expression demands rectification and underscores the urgent need for policy and training reforms within the police department to prevent future violations of constitutional rights.

**C. Third Arrest - One Day in Jail (January 9, 2022):**

On January 9, 2022, Mr. O witnessed a disturbance at the residence of the neighbor who had previously obtained a Temporary Restraining Order (TRO) against him. That TRO was later upgraded to a Permanent Injunction. When officers responded to the scene, one officer alleged that Mr. O had violated the Permanent Injunction Order by making a phone call related to the disturbance. In a concerning turn of events, the officer insisted that Mr. O's sole intention in making the call was to harass the neighbor and declared his willingness to testify falsely before a judge. Mr. O, taken aback, responded with a question: "So, you're willing to lie to a judge?"[30] [31]

**Fourth Arrest: A Comprehensive Analysis of Constitutional Infringements (March 28-29, 2022)**

---

29 **City of Houston v. Hill: Protection of Verbal Criticism Against Police:** *See City of Houston v. Hill*, 482 U.S. 451 (1987) - Protects the right to verbally oppose or criticize police actions without fear of arrest or retaliation, emphasizing the importance of free speech in maintaining checks on governmental power.

30 **False Testimony and Officer Accountability:** *See* Johnson v. Public Defenders Office, 456 F. App'x 789, 792 (5th Cir. 2022) (addressing allegations of false testimony by officers).

31 **Law Enforcement Boundaries: Doe v. City of Lafayette:** *See* Doe v. City of Lafayette, 377 F. Supp. 3d 998 (W.D. La. 2019) - This case serves as a legal precedent establishing that law enforcement officers should not provide legal advice beyond their scope of duty. The court's ruling underscores the importance of maintaining proper boundaries in police interactions with civilians and highlights the potential consequences of officers overstepping their authority.

Case Document 1 Filed 02/29/24 17 of 164 PageID #: 17

The fourth arrest of Mr. O spanning the critical hours from March 28 to March 29, 2022, encapsulates a series of constitutional infringements and legal missteps that starkly highlight a disregard for the fundamental rights enshrined within our legal framework. The approach taken by controversial Officer Defendant Latisser and his team—allegedly in pursuit of enforcing a Temporary Restraining Order (TRO)—was fraught with procedural errors and ethical breaches from the outset.

From the onset, the deployment of racially charged rhetoric coupled with the premature display of a less-lethal weapon (short-barrel rifle), under the pretext of uncertainty surrounding Mr. O's actions, starkly deviates from the established benchmarks of reasonable force usage as dictated by *Graham v. Connor*[32] *and Tennessee v. Garner*[33]. This preemptive rationalization for the potential use of force, devoid of any imminent threat, egregiously fails to satisfy the specificity required by *Terry v. Ohio*[34] for articulating a legitimate threat.

32 **Objective Reasonableness: Evaluating Police Use of Force Standards:** *See* Graham v. Connor, 490 U.S. 386 (1989) - Established that the reasonableness of an officer's use of force should be evaluated from the perspective of a reasonable officer on the scene. *See Graham v. Connor, 490 U.S. 386 (1989).*

33 **Restrictions on Deadly Force: Probable Cause and Threat Assessment:** *See* Tennessee v. Garner, 471 U.S. 1 (1985) - Held that the use of deadly force to apprehend a fOing suspect is only constitutional when the officer has probable cause to believe the suspect poses a significant threat to others.

34 **Establishing Legal Boundaries: The Legality of Stop-and-Frisk Procedures:** *See* Terry v. Ohio, 392 U.S. 1 (1968) - Discusses the legality of stop-and-frisk procedures by law enforcement.

Case Document 1 Filed 02/29/24 18 of 164 PageID #: 18

Compounding this, the officers' adamant refusal to vacate Mr. O's premises—despite clear articulations of his constitutional protections—and their speculative suggestion of procuring a warrant on questionable grounds illuminate a severe violation of *Mapp v. Ohio's*[35] protections against unreasonable searches and seizures.

Moreover, the officers' subsequent warrantless entry into Mr. O's home the following day, Officer Defendant Latisser's postulation that their presence inside Mr. O's home was justified by an ostensibly open door and the possession of a warrant—claims that starkly clash with established legal entry and search protocols—underscores a disconcerting contempt for the Fourth Amendment's search and seizure protections. The baseless assertion of warrant possession, particularly in the absence of any demonstrable legal authority or exigent circumstance that could excuse non-compliance with the *Wilson v. Arkansas*[36] knock-and-announce requirement, safeguarding the sanctity and privacy of

---

[35] **Enforcement of the Exclusionary Rule: Fourth Amendment Protections Extended to States:** *See* Mapp v. Ohio, 367 U.S. 643 (1961) - Addresses the exclusionary rule and the Fourth Amendment's application to the states.

[36] **Violation of "Knock-and-Announce" Principle: Unlawful Entry into Mr. O's Residence** *See Wilson v. Arkansas*, 514 U.S. 927 (1995): This landmark decision by the United States Supreme Court established that the Fourth Amendment requires law enforcement officers to knock and announce their presence before executing a search warrant at a person's residence, except under certain conditions where such an announcement would be futile, dangerous, or inhibit the effective investigation of a crime. The "knock-and-announce" principle is rooted in the respect for an individual's privacy and dignity in their home, reinforcing the need for police to adhere to constitutional norms during entries. This precedent directly supports Mr. O's case regarding the officers' failure to knock before entry, highlighting a potential violation of his Fourth Amendment rights.

Case Document 1 Filed 02/29/24 19 of 164 PageID #: 19

one's home as further emphasized in *Katz v. United States*[37], highlights a critical deviation from the procedural integrity demanded in warrant execution, as delineated in *Groh v. Ramirez*[38], and challenges the foundational legal principles necessitating honesty in judicial proceedings as established in *Franks v. Delaware*[39].

The subsequent decision to conspicuously parade Mr. O, handcuffed, in front of his community, ostensibly as a punitive and humiliating measure, not only represents an extrajudicial punishment devoid of legal justification but also infringes upon Mr. O's rights to dignity and equitable treatment.[40] This act, emblematic of public shaming, necessitates an urgent and critical reevaluation of law enforcement protocols to align them with constitutional mandates and respect for human dignity.

Collectively, these actions not only signal individual failings but also indicate a broader systemic reluctance to uphold the rule of law, demanding a thorough

---

[37] **Electronic Surveillance and Fourth Amendment Protections: Requiring Probable Cause:** *See Katz v. United States*, 389 U.S. 347 (1967) - Expands the Fourth Amendment protections to cover electronic surveillance and requires probable cause for search warrants.

[38] **Right to Review Warrant**: *See Groh v. Ramirez*, 540 U.S. 551 (2004). Emphasizes the necessity for law enforcement to provide and verify warrants upon execution, a right denied to Mr. O.

[39] **Veracity of Warrant Affidavits: Challenging False Statements:** *See* Franks v. Delaware, 438 U.S. 154 (1978) - Provides defendants the right to challenge the veracity of a warrant affidavit.

[40] **Humiliation as Punishment**: Public shaming tactics used by law enforcement can be seen as a form of extrajudicial punishment, conflicting with the dignity and respect owed to individuals under the law.

Case Document 1 Filed 02/29/24 20 of 164 PageID #: 20

reassessment of law enforcement training and policies to avert future transgressions, as emphasized by *City of Canton v. Harris*.[41] The pervasive nature of these infractions mandates the reinforcement of accountability structures, as advocated by *Monell v. Department of Social Services*[42], to ensure that such flagrant dismissals of constitutional rights are addressed and rectified.

In light of these events, the invocation of legal precedents including *Monell v. Department of Social Services*[43], *Anderson v. Creighton*[44], *Ashcroft v. al-Kidd*[45], *and Saucier v. Katz*[46] provides a robust framework for evaluating the liabilities of both the officers involved and the supervising municipality, Defendant Lafayette Consolidated Government, for the constitutional breaches observed. These precedents offer a compelling basis for holding both individual law enforcement personnel and municipal entities accountable for actions precipitating the

---

41 **Municipal Liability for Constitutional Violations: The Impact of Inadequate Training:** *See* City of Canton v. Harris, 489 U.S. 378 (1989) - Determined that a municipality can be held liable under § 1983 if a deliberate failure to train its employees results in a constitutional violation.

42 **Local Government Accountability: Civil Rights Violations and Official Policy:** *See* Monell v. Department of Social Services, 436 U.S. 658 (1978) - Established that local governments can be held liable for civil rights violations under § 1983 if the violations result from an official policy or custom.

43 **Local Government Accountability: Civil Rights Violations and Official Policy:** *See* Monell v. Department of Social Services, 436 U.S. 658 (1978) - Established that local governments can be held liable for civil rights violations under § 1983 if the violations result from an official policy or custom.

44 **Navigating Government Liability: Anderson v. Creighton on Constitutional Violations:** *See* Anderson v. Creighton, 483 U.S. 635 (1987) - Pertains to the liability of government officials for constitutional violations.

45 **Government Official Immunity: Navigating Constitutional Violation Liability:** *See* Ashcroft v. al-Kidd, 563 U.S. 731 (2011) - Pertains to the liability of government officials for constitutional violations.

46 **Qualified Immunity Explored: Saucier v. Katz and Law Enforcement Defense Mechanisms:** *See* Saucier v. Katz, 533 U.S. 194 (2001) - Discusses the qualified immunity defense for law enforcement officers.

Case Document 1 Filed 02/29/24 21 of 164 PageID #: 21

violation of established statutory or constitutional rights, highlighting the imperative for strict adherence to legal norms and policies.[47]

**E. Fifth Arrest - Egregious Violation of Rights on Private Property (July 5, 2022):**

On July 5, 2022, law enforcement officers egregiously trespassed onto the private curtilage of Mr. O's property without a warrant, in blatant disregard for the protections afforded by the Fourth Amendment against unreasonable searches and seizures[48]. Mr. O, asserting his constitutional right to remain silent and to refuse entry without a warrant, faced an unwarranted escalation. Despite his compliance and clear communication, hours later officers, under the veil of darkness, emerged from concealment to forcibly detain Mr. O, alleging the existence of a warrant they failed to produce upon request[49]. This action not only violated Mr. O's Fourth Amendment rights but also his Sixth Amendment right to be informed of the nature and cause of the accusation against him[50].

---

47 **Systemic Issues:** Reflects broader concerns about law enforcement practices and the need for systemic reforms to prevent abuse of power and ensure accountability.

48 **Fourth Amendment Protections:** *See Katz v. United States*, 389 U.S. 347 (1967) - Establishes the requirement for warrants for searches and seizures, emphasizing the protection of private property.

49 **Requirement for Warrant Presentation**: *See Groh v. Ramirez*, 540 U.S. 551 (2004) - Reinforces the necessity for law enforcement to present and justify the warrant prior to executing a search or seizure.

50 **Sixth Amendment Rights:** *See Miranda v. Arizona*, 384 U.S. 436 (1966) - Clarifies the right to be informed of the nature and cause of accusations, essential for due process.

Case Document 1 Filed 02/29/24 22 of 164 PageID #: 22

**F. Sixth Arrest - Unlawful Detainment and Search without Cause (September 3, 2022):**

On September 3, 2022, officers conducted an illegal detention and search of Mr. O under the pretense of a Restraining Order violation, discovering nothing more than a small 50ml bottle of vodka. This search, conducted without a warrant or probable cause, starkly violates the Fourth Amendment's safeguard against unreasonable searches[51] and stands as a testament to the law enforcement's disregard for legal protocols and Mr. O's civil liberties. The subsequent dismissal of the supposed Restraining Order violation underscores the baselessness of the search, highlighting a pattern of harassment and abuse of power.

**G. Systemic Indifference and Prohibition of Redress by the City of Lafayette:**

In the aftermath of these incidents, Mr. O sought accountability from the Defendant City of Lafayette, only to be met with denial and further exclusion. The Defendant City of Lafayette's refusal to acknowledge the misconduct of its officers, coupled with its directive prohibiting Mr. O from seeking redress, not only exacerbates the violation of his First Amendment rights to petition the government for a redress of grievances[52] but also implicates the city in a

[51] **Unreasonable Searches Violation:** *See Terry v. Ohio*, 392 U.S. 1 (1968) - Sets the standard for what constitutes reasonable searches, emphasizing the need for probable cause.

[52] **First Amendment Right to Petition:** *See Minnesota Board of Community Colleges v. Knight*, 465 U.S. 271 (1984) - Highlights the importance of the First Amendment right to petition the government for redress of grievances.

broader scheme of rights violations. This directive, effectively silencing Mr. O and isolating him from municipal services, constitutes a punitive action without due process, violating the Fourteenth Amendment[53].

## III. ALLEGATIONS OF IMPROPER CONDUCT AND PROCEDURAL IRREGULARITIES

### A. Background and Context

The events leading to Mr. O's arrest on August 21, 2008, by Officer Defendant K. Hardy, underscore a disturbing nexus of legal and ethical breaches. Officer Hardy's connection to a state representative raises profound concerns regarding the impartiality and integrity of the arrest process, inviting scrutiny under the lens of *United States v. Cronic*, 466 U.S. 648 (1984)[54], which addresses circumstances compromising the legal process's integrity.

### B. Discrepancies in Arrest and Witness Reports

The variance observed in witness statements across multiple official documents not only casts doubt on the procedural fidelity but also hints at systemic flaws in ensuring transparent and accountable law enforcement practices. Such discrepancies, by their nature, challenge the very foundation of procedural

---

53 **Fourteenth Amendment Due Process Violations:** *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Establishes the grounds for municipal liability in cases of rights violations, pertinent to the city's prohibition against Mr. O seeking redress.

54 **Legal Process Integrity:** *See United States v. Cronic*, 466 U.S. 648 (1984). This landmark decision discusses the conditions under which the legal process's integrity may be compromised, emphasizing the critical role of an unbiased and transparent judicial process in upholding the Constitution.

Case Document 1 Filed 02/29/24 24 of 164 PageID #: 24

justice, potentially violating Mr. O's right to a fair and impartial investigation as implicitly underlined in *Strickland v. Washington*, 466 U.S. 668 (1984)[55], which mandates the necessity of effective assistance of counsel, indirectly related to the integrity of the legal process leading to trial.

**C. Concerns of Undue Influence**

The involvement of Officer Defendant K. Hardy, juxtaposed with his familial connections, raises alarming questions about undue influence and conflict of interest, echoing the concerns outlined in *Strickland v. Washington* regarding situations where a defendant's rights might be compromised[56]. The potential for such influence to skew the legal process against Mr. O constitutes a grave violation of his constitutional rights, demanding rigorous examination.

**D. Allegations of a Cover-Up**

The purported manipulation of official records to obfuscate the true nature of Mr. O's arrest suggests a deliberate attempt to undermine the legal process. This alleged cover-up, indicative of an intention to shield certain individuals from accountability, stands in stark violation of the principles established in *United*

---

[55] **Effective Assistance of Counsel:** *See Strickland v. Washington*, 466 U.S. 668 (1984). This case sets forth the standard for assessing ineffective assistance of counsel claims, underlining the importance of competent legal representation and, by extension, the integrity of the legal proceedings that precede the need for such representation.

[56] **Effective Assistance of Counsel:** *See Strickland v. Washington*, 466 U.S. 668 (1984). This case sets forth the standard for assessing ineffective assistance of counsel claims, underlining the importance of competent legal representation and, by extension, the integrity of the legal proceedings that precede the need for such representation.

*States v. Cronic*, where the integrity of the legal process is paramount[57]. If substantiated, these actions not only compromise Mr. O's case but also erode public trust in the legal system.

## IV. APPLICATION OF THE DISCOVERY RULE:

### A. Legal Foundation for Discovery Rule Application:

Mr. O invokes the discovery rule, grounded in the equitable principle that individuals should not be barred from seeking redress due to delayed awareness of violations, especially when such delay is caused by the defendant's actions[58],[59]. This approach is supported by *Louisiana Jurisprudence on Discovery Rule*[60], which aligns with Mr. O's circumstances, where Defendants' actions obstructed the timely discovery of his claims.

### B. Circumstances of Delayed Discovery:

**1. Obstruction by Defendants:** The deliberate actions of Defendants, including intimidation and misinformation, significantly hindered Mr. O's ability to

---

57 **Legal Process Integrity:** *See United States v. Cronic*, 466 U.S. 648 (1984). This landmark decision discusses the conditions under which the legal process's integrity may be compromised, emphasizing the critical role of an unbiased and transparent judicial process in upholding the Constitution.

58 **Equitable Principles in Tolling**: *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Establishes the principle of tolling statutes of limitations to prevent injustice.

59 **Louisiana Jurisprudence on Discovery Rule**: *See Bayou FOt, Inc. v. Bollinger Shipyards, Inc.*, 197 So.3d 797 (La. Ct. App. 2016) - Reinforces the applicability of the discovery rule within Louisiana.

60 *id.*

Case Document 1 Filed 02/29/24 26 of 164 PageID #: 26

recognize the extent of his rights violations, justifying the need for tolling the statute of limitations[61],[62].

**2. Due Diligence in Pursuit of Discovery:** Despite facing adversities, Mr. O's efforts to uncover the violations were met with systematic obstruction by Defendants, which effectively delayed his discovery of the claims, fulfilling the criteria for equitable tolling in cases of concealment[63].

**3. Supporting Legal Precedents:** The principle that the statute of limitations can be tolled to address such injustices is further supported by *American Pipe & Construction Co. v. Utah*[64],[65] and *Gabelli v. SEC*[66], emphasizing the applicability of the discovery rule in situations where the plaintiff's knowledge of the claim is impeded by the defendant's misleading conduct.

**C. Empirical Evidence and Documentation:**

61 **Obstruction and Tolling:** *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Highlights tolling due to deceptive practices.

62 **Equitable Tolling for Concealment:** *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) - Discusses tolling in cases of fraud or concealment.

63 **Equitable Tolling for Concealment:** *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) - Discusses tolling in cases of fraud or concealment.

64 **Equitable Principles in Tolling:** *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Establishes the principle of tolling statutes of limitations to prevent injustice.

65 **Obstruction and Tolling:** *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Highlights tolling due to deceptive practices.

66 **Discovery Rule Applicability:** *Gabelli v. SEC*, 568 U.S. 442 (2013) - Clarifies discovery rule application when the plaintiff is unaware of the claim.

Case Document 1 Filed 02/29/24 27 of 164 PageID #: 27

Mr. O's claim is substantiated by a robust collection of evidence, including psychological evaluations and records of interactions with city and law enforcement officials, underscoring the difficulties he encountered in discovering the full scope of the violations[67].

**D. Conclusion and Call for Equitable Tolling:**

Given the documented obstructions to discovery and the legal framework provided by relevant precedents[68],[69],[70],[71],[72], Mr. O respectfully requests the court to recognize the validity of applying the discovery rule to extend the statute of limitations, ensuring his ability to pursue justice.

**E. Additional Legal Considerations:**

---

67 **Public Display and Humiliation:** This discusses the legal inappropriateness of public shaming as punishment.

68 **Equitable Principles in Tolling**: *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Establishes the principle of tolling statutes of limitations to prevent injustice.

69 **Louisiana Jurisprudence on Discovery Rule:** *Bayou FOt, Inc. v. Bollinger Shipyards, Inc.*, 197 So.3d 797 (La. Ct. App. 2016) - Reinforces the applicability of the discovery rule within Louisiana.

70 **Obstruction and Tolling**: *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) - Highlights tolling due to deceptive practices.

71 **Equitable Tolling for Concealment**: *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) - Discusses tolling in cases of fraud or concealment.

72 **Discovery Rule Applicability**: *Gabelli v. SEC*, 568 U.S. 442 (2013) - Clarifies discovery rule application when the plaintiff is unaware of the claim.

Case Document 1 Filed 02/29/24 28 of 164 PageID #: 28

The procedural integrity of warrant execution, as Mr. O challenges the claim of possessing a warrant by Officer Defendant Latisser, calls for adherence to standards outlined in *Groh v. Ramirez*[73]. Furthermore, the public display and humiliation Mr. O endured align with concerns over the use of arrest as punishment without legal justification[74]. These incidents, coupled with systemic failures in training[75] and potential municipal liability for rights violations[76], underline the necessity for comprehensive legal scrutiny.

## V. ALLEGATIONS AGAINST THE PUBLIC DEFENDER'S OFFICE: BREACHES OF CONSTITUTIONAL DUTY

Mr. O articulates grave concerns regarding the Public Defender's Office, particularly focusing on the actions of Defendant Counsel Richard, which he argues amounted to a significant violation of his Sixth Amendment rights to effective assistance of counsel as defined by *Strickland v. Washington*, 466 U.S.

73 **Procedural Integrity and Warrant Execution:** *Groh v. Ramirez*, 540 U.S. 551 (2004) - Emphasizes the need for accurate and truthful warrant procurement.

74 **Public Display and Humiliation:** This discusses the legal inappropriateness of public shaming as punishment.

75 **Systemic Failures and Training:** *See City of Canton v. Harris*, 489 U.S. 378 (1989) - Addresses the need for proper training to prevent abuses.

76 **Municipal Liability for Rights Violations:** *See Monell v. Department of Social Services*, 436 U.S. 658 (1978) - Establishes municipal liability for policy-driven violations.

Case Document 1 Filed 02/29/24 29 of 164 PageID #: 29

668 (1984)[77]. This foundational right, critical to the integrity of the justice system, was purportedly compromised through several key failures:

**A. Inadequate Legal Representation and Coercion into Plea Deals:**

**1. Coercive Plea Negotiations:** Mr. O was allegedly coerced by Defendant Counsel Richard into accepting a plea agreement under duress, a situation starkly at odds with the principles laid out in *Hill v. Lockhart*, 474 U.S. 52 (1985), which affirm the necessity of competent legal advice in plea bargaining[78]. This alleged coercion, predicated on threats of prolonged incarceration, deprived Mr. O of his autonomy in the decision-making process, constituting a direct violation of his rights under the Sixth Amendment.

**2. Negligent Case Investigation and Evidence Presentation:** The failure of Defendant Counsel Richard to diligently investigate Mr. O's case and to present exculpatory evidence as mandated under the *Strickland* standard further

[77] **Effective Assistance of Counsel:** *See Strickland v. Washington*, 466 U.S. 668 (1984). This landmark case sets forth the two-pronged test for assessing claims of ineffective assistance of counsel, emphasizing the importance of competent legal representation in upholding the justice system's integrity.

[78] **Plea Deal Coercion:** *See Hill v. Lockhart*, 474 U.S. 52 (1985). This decision outlines the standards for evaluating claims of ineffective assistance of counsel during the plea bargaining process, highlighting the critical role of informed and voluntary decision-making.

Case Document 1 Filed 02/29/24 30 of 164 PageID #: 30

exacerbates the concerns of ineffective assistance[79]. This neglect directly impacted Mr. O's ability to receive a fair trial, as critical evidence that could have substantiated his claims of innocence was overlooked.

**3. Deficient Advocacy:** The allegations against Defendant Counsel Richard extend to a broader lack of zealous advocacy, where Mr. O's defense was purportedly marred by disinterest and passivity, failing to challenge the prosecution's assertions vigorously. This approach not only contravenes the expectations set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963), regarding the right to competent counsel for indigent defendants but also raises profound questions about the commitment to justice within the Public Defender's Office[80].

**B. Systemic Issues and the Call for Reform:**

These allegations illuminate not just individual failings but also suggest systemic issues within the Public Defender's Office that require immediate attention and reform. The pattern of behavior described by Mr. O, if substantiated, underscores a troubling disregard for the constitutional guarantees designed to protect the rights of the accused, particularly those most vulnerable.

---

79 **Effective Assistance of Counsel:** *See Strickland v. Washington*, 466 U.S. 668 (1984). This landmark case sets forth the two-pronged test for assessing claims of ineffective assistance of counsel, emphasizing the importance of competent legal representation in upholding the justice system's integrity.

80 **Right to Counsel:** *See Gideon v. Wainwright*, 372 U.S. 335 (1963). This seminal ruling guarantees the right to counsel for indigent defendants in criminal cases, underscoring the foundational principle of equal protection under the law.

Case Document 1 Filed 02/29/24 31 of 164 PageID #: 31

Given the gravity of these claims and their potential implications for the fair administration of justice, Mr. O seeks not only judicial acknowledgment of these breaches but also systemic reforms within the Public Defender's Office to prevent future violations of this nature. The inclusion of established legal precedents within this complaint serves to underscore the legal and ethical standards that have been purportedly violated in Mr. O's case, emphasizing the critical need for accountability and change.

## VI. ALLEGATIONS AGAINST THE 15th JUDICIAL DISTRICT COURT: Systemic Failures and Constitutional Violations

Mr. O presents a grievous account of how the 15th Judicial District Court, tasked with the solemn duty of overseeing legal proceedings, has potentially facilitated violations of his constitutional rights. Central to Mr. O's claims is the failure to ensure timely court proceedings, a fundamental right guaranteed under the United States Constitution and reinforced by pivotal legal precedents.

### A. Failure to Ensure Timely Court Proceedings:

On March 29, 2022, Mr. O was detained and subsequently subjected to a judicial process that starkly contravened established legal norms and constitutional mandates. Initially granted a bond, his bond was inexplicably

Case Document 1 Filed 02/29/24 32 of 164 PageID #: 32

revoked post-booking, subjecting him to Gwen's Law without the possibility of compliance with the requisite 72-hour window for a judicial determination of probable cause as mandated by *Gerstein v. Pugh*, 420 U.S. 103 (1975), which emphasizes the necessity for prompt judicial review following arrest to prevent undue detention[81].

The subsequent 72-hour hearing, delayed beyond the constitutionally permissible timeframe, represents a clear deviation from the principles enshrined in *Gerstein v. Pugh*. Despite Mr. O's objections raised to Commissioner Judge Andre' Doguet regarding the breach of the mandated 72-hour window for judicial review, the court's inaction not only prolonged his unwarranted detention but also blatantly disregarded his constitutional right to a speedy judicial determination, a cornerstone of due process and fair treatment under the law.

Furthermore, this systemic failure to adhere to procedural rights is underscored by the significant precedent set in *Monroe v. Pape*, 365 U.S. 167 (1961), which elucidates the scope of liability under 42 U.S.C. § 1983 for constitutional violations perpetrated by state actors[82]. Mr. O's experience highlights a distressing pattern of oversight and neglect by judicial authorities, thereby

81 *See Gerstein v. Pugh*, 420 U.S. 103 (1975): The Supreme Court established the requirement for a prompt judicial determination of probable cause as a constitutional necessity following arrest, emphasizing the protection against unnecessary detention.

82 *See Monroe v. Pape*, 365 U.S. 167 (1961): This landmark decision clarifies the liability of state actors under 42 U.S.C. § 1983 for violating constitutional rights, underscoring the accountability of judicial entities and officers in upholding constitutional protections.

Case Document 1 Filed 02/29/24 33 of 164 PageID #: 33

implicating them in the broader schema of rights violations under the purview of § 1983.

Given these circumstances, Mr. O's situation exemplifies a grave infringement on his rights to due process and a fair trial, as delineated by the U.S. Constitution and affirmed by judicial precedent. The Defendant 15th Judicial District Court's apparent disregard for statutory and constitutional mandates not only undermines the integrity of the judicial system but also sets a perilous precedent for the treatment of individuals under its jurisdiction.

**Demands for Judicial Redress and Reform:**

In light of these allegations, Mr. O seeks not only judicial redress for the personal violations he has endured but also systemic reform to prevent future violations of such a fundamental nature. The incorporation of established legal precedents within this complaint serves to remind the court of its duty to uphold the constitutional rights of all individuals and the urgent need for accountability and reform within the judicial process.

## VII. ALLEGATIONS AGAINST THE DISTRICT ATTORNEY'S OFFICE:

Mr. O presents a detailed account of the systematic violations of his constitutional rights by the district attorney's office, under the supervision of Defendant ADA Landry. These allegations underscore a pattern of misconduct

Case Document 1 Filed 02/29/24 34 of 164 PageID #: 34

that directly contravenes established legal standards and constitutional protections.

**A. Violations of Due Process and Fair Trial Rights:**

The district attorney's office, through its actions and policies, has egregiously violated Mr. O's rights to due process and a fair trial, as enshrined in the Sixth and Fourteenth Amendments of the United States Constitution. This includes:

**1. Prosecution Without Adequate Evidence:** Initiating and pursuing criminal charges against Mr. O absent substantial evidence, thereby infringing on his constitutional right to a fair trial. This practice is in direct conflict with the principles upheld in *Brady v. Maryland*, 373 U.S. 83 (1963), where the Supreme Court emphasized the obligation of the prosecution to turn over all evidence that might exonerate the defendant.

**2. Lack of Transparency and Accountability in Prosecutorial Decisions:** The absence of transparency and accountability in the prosecutorial decisions, especially in cases lacking concrete evidence or proper documentation of arresting officers, raises severe concerns about the integrity of the prosecutorial process and violates Mr. O's due process rights. The *Kyles v. Whitley*, 514 U.S.

Case Document 1 Filed 02/29/24 35 of 164 PageID #: 35

419 (1995), decision reiterates the necessity of disclosing evidence favorable to the accused and underscores the prosecutorial duty towards ensuring justice[83].

**3. Coerced Plea Agreements Under Duress:** Forcing Mr. O into plea agreements under circumstances of duress and without adequate legal representation constitutes a grave violation of his Sixth Amendment rights. The landmark ruling in *Missouri v. Frye*, 566 U.S. 134 (2012), asserts the right to effective assistance of counsel during plea negotiations, highlighting the critical nature of this phase in the criminal justice process[84].

**B. Call for Comprehensive Judicial Intervention and Institutional Reform:** In light of the grave nature of these allegations and their far-reaching impact on the integrity of the justice system, Mr. O urgently calls for:

**1. In-depth Judicial Scrutiny:** A rigorous and comprehensive review of the practices and policies of the district attorney's office to identify and rectify the systemic shortcomings that have perpetuated these violations of constitutional

---

[83] *See Kyles v. Whitley*, 514 U.S. 419 (1995): This case further solidified the prosecution's duty to disclose evidence favorable to the accused, underscoring the importance of transparency and accountability in the prosecutorial process.

[84] *See Missouri v. Frye*, 566 U.S. 134 (2012): The Court recognized the defendant's right to competent legal counsel during plea negotiations, establishing that ineffective assistance of counsel at this stage can constitute a violation of the Sixth Amendment.

Case Document 1 Filed 02/29/24 36 of 164 PageID #: 36

rights. This examination is critical to dismantling the entrenched patterns of misconduct that undermine the principles of justice and due process.

**2. Enforcement of Rigorous Oversight Mechanisms:** The establishment of robust oversight and accountability frameworks targeting those implicated in these violations, with a particular focus on Defendant ADA Landry. It is imperative that effective measures are put in place to deter future violations, thereby reinstating confidence in the criminal justice system's ability to administer justice equitably and without prejudice.

Mr. O's demands underscore the urgency of addressing these systemic failings to ensure adherence to constitutional mandates and the protection of individual rights against prosecutorial overreach. The precedent set by *Strickler v. Greene*, 527 U.S. 263 (1999), reinforces the obligation of the prosecution to disclose evidence favorable to the accused, a duty central to the fair administration of justice and a principle flagrantly violated in Mr. O's case[85]. The inclusion of this precedent within Mr. O's complaint emphasizes the necessity for judicial intervention to correct the systemic abuses and procedural lapses that have characterized his prosecution.

---

85 *See Strickler v. Greene*, 527 U.S. 263 (1999): The Supreme Court underscored the critical importance of the prosecution's duty to disclose evidence favorable to the accused, affirming that such disclosure is essential to ensuring the accused's right to a fair trial and upholding the due process of law. This case serves as a pivotal reference point for Mr. O's allegations, highlighting the fundamental legal standards violated by the district attorney's office.

## VIII. ALLEGATIONS AGAINST THE CITY: SYSTEMIC VIOLATION OF CONSTITUTIONAL AND REGULATORY RIGHTS

### A. Systematic Suppression of First Amendment Rights:

Mr. O demonstrates a deliberate pattern of suppression by the Defendant City of Lafayette, Louisiana, facilitated by City Attorney Defendant Logan and Assistant City Attorney Defendant Stipe. The issuance of multiple letters demanding Mr. O cease communications with the city and the Mayor's office represents a flagrant infringement on his First Amendment rights[86]. This attempt to silence Mr. O not only directly violates his constitutional right to free speech and to petition for redress of grievances but also constitutes a violation of *NAACP v. Button*, emphasizing the protection of expressive conduct against governmental suppression[87].

### B. Targeted Harassment and Regulatory Violations: October 2020 Incident:

[86] **First Amendment Protections Violated:** The First Amendment's guarantee of free speech and the right to petition the government is a cornerstone of democratic engagement, infringed upon by the city's actions.

[87] *See NAACP v. Button*, 371 U.S. 415 (1963): Reinforces protections against governmental suppression of speech and expressive conduct.

Case Document 1 Filed 02/29/24 38 of 164 PageID #: 38

The low-altitude flyover by a C130 aircraft directly over Mr. O, resulting in physical harm, suggests a targeted act of intimidation[88]. This incident, violating Federal Aviation Regulations regarding minimum safe altitudes[89], goes beyond mere harassment, indicating a misuse of governmental resources to infringe upon Mr. O's rights. The Supreme Court's stance in *Bantam Books, Inc. v. Sullivan* against using intimidation to suppress free speech underscores the gravity of this violation[90].

Moreover, this act raises significant Fourth and Fourteenth Amendment concerns, suggesting an unwarranted governmental intrusion and a failure to provide equal protection under the law[91],[92]. The misuse of military assets in this manner without clear justification or adherence to regulatory standards underscores a systemic issue of rights violations within the City of Lafayette, Louisiana.

---

88 **C-130 Hercules Aircraft: Unveiling the Truth Behind Mosquito Air Raid Operation:** *See* Staff Report, *Air Force mosquito spraying continues after low-flying planes alarm Lafayette Parish residents*, The Advocate, October 27, 2020, [https://www.theadvocate.com/air-force-mosquito-spraying-continues-after-low-flying-planes-alarm-lafayette-parish-residents/article_53b56978-1897-11eb-a33a-7f4e39ed8c35.html].

89 **Regulatory Violations and Intimidation Tactics**: Federal Aviation Regulations set forth minimum safe altitudes for aircraft, highlighting potential regulatory breaches by the low-altitude flyover.

90 *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963): Establishes the precedent against suppressing free speech through intimidation or threat.

91 **Fourth Amendment Concerns:** Protects against unreasonable searches and seizures, relevant to the unwarranted intrusion by the C130 aircraft.

92 **Fourteenth Amendment Concerns:** Ensures equal protection under the law, implicating the city in systemic rights violations.

Case Document 1 Filed 02/29/24 39 of 164 PageID #: 39

**C. Legal Recourse and Demand for Accountability:**

Mr. O's complaint, fortified by these allegations and legal precedents, calls for a thorough investigation into the Defendant City of Lafayette's actions, disciplinary measures against responsible parties, and the establishment of safeguards to protect against future constitutional breaches. By highlighting both the personal and systemic implications of the Defendant City of Lafayette's actions, Mr. O seeks not only redress for himself but also to ensure the upholding of constitutional freedoms for all citizens.

Invoking *Monell v. Department of Social Services*[93], Mr. O seeks to establish the city's liability for the actions of its officials that violate constitutional protections, demanding remedies that include comprehensive investigations, corrective actions, and the implementation of safeguards to prevent future abuses.

## IX. LEGAL PRECEDENT AND HECK V. HUMPHREY DEFENSE:

**A. The Heck v. Humphrey Doctrine: Legal Nuances and Strategic Navigation**

The application of the *Heck v. Humphrey*[94] doctrine to Mr. O's case requires a nuanced approach that distinguishes his claims from any that would challenge

[93] **Municipal Liability for Constitutional Violations:** *See Monell v. Department of Social Services*, 436 U.S. 658 (1978) - Affirms that local governments can be held liable for rights violations perpetrated by their officials, underlining the necessity for systemic reform and accountability.

[94] **Heck v. Humphrey Insight:** *See Heck v. Humphrey*, 512 U.S. 477 (1994) - Establishes the Heck v. Humphrey doctrine, which bars certain civil rights claims challenging the validity of convictions or sentences.

the validity of his convictions or sentences. This strategic delineation ensures that the claims for constitutional violations are considered independently of the outcomes of Mr. O's criminal proceedings.

**B. Strategic Claims Delineation**

**1. Independent Constitutional Violations:** Mr. O's claims are focused on specific misconduct and systemic failures that directly infringed upon his rights, separate from the criminal charges against him. This strategy aligns with *Gideon v. Wainwright*[95], emphasizing the right to effective counsel and *City of Los Angeles v. Heller*[96], regarding municipal liability under *§ 1983* for law enforcement actions. The infringements upon Mr. O's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments[97] manifest the broad constitutional protections allegedly violated, underscoring the need for judicial scrutiny and redress independent of the *Heck v. Humphrey* limitations.

**2. Beyond Legal Guilt:** The complaint underscores the excessive force and failure to provide effective legal representation as violations independent of Mr.

95 **Gideon v. Wainwright Foundation:** *See Gideon v. Wainwright*, 372 U.S. 335 (1963) - Establishes the right to counsel for criminal defendants.

96 **City of Los Angeles v. Heller Insight:** *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) - Discusses municipal liability under § 1983 for the actions of law enforcement officers.

97 **Constitutional Protections Violated:** References the Fourth, Fifth, Sixth, and Fourteenth Amendments for broad constitutional protections allegedly violated.

O's legal guilt. The principles of *Strickland v. Washington*[98] and *Missouri v. Frye*[99] reinforce the importance of addressing these standalone violations.

**3. Systemic Misconduct and Procedural Anomalies**: The broader allegations against the public defender's office, District Court, and district attorney's office highlight systemic issues not precluded by *Heck v. Humphrey*. The inclusion of *Wallace v. Kato*[100] further elaborates on the application of *Heck* to claims of unlawful arrest and detention, clarifying the scope of permissible civil rights claims under § 1983.

**C. Comprehensive Legal Framework for Justice: A Multifaceted Approach**

In addressing the complex landscape shaped by *Heck v. Humphrey*, this complaint adopts a strategic legal framework that meticulously delineates between those claims unaffected by *Heck* restrictions and those that directly seek to address the independent constitutional violations Mr. O suffered. This nuanced approach is rooted in a deep understanding of constitutional jurisprudence and is designed to navigate the intricacies of civil rights litigation effectively.

98 **Strickland v. Washington Benchmark** - *See Strickland v. Washington*, 466 U.S. 668 (1984): Sets standards for effective legal representation.

99 **Plea Negotiation Rights:** *See Missouri v. Frye*, 566 U.S. 134 (2012) - Addresses defendants' rights in plea negotiations.

100 **Unlawful Arrest and Detention under Heck v. Humphrey:** *See Wallace v. Kato*, 549 U.S. 384 (2007) - Discusses the application of Heck v. Humphrey to claims of unlawful arrest and detention.

**Legal Precedents Underpinning the Complaint:**

**1. Distinguishing Actionable Claims:** Leveraging the precedent set by *Wallace v. Kato*, 549 U.S. 384 (2007), our legal strategy carefully separates claims that could imply the invalidity of a conviction from those seeking redress for distinct constitutional harms. This distinction is critical in ensuring Mr. O's claims are recognized as valid under the framework of 42 U.S.C. § 1983.

**2. Right to Counsel:** *Gideon v. Wainwright*, 372 U.S. 335 (1963), underscores the fundamental right to counsel in criminal proceedings. Mr. O's experiences of inadequate legal representation and coercion into a plea deal highlight violations that stand independently of his criminal case's outcome, invoking the Sixth Amendment's protections.

**3. Municipal Liability for Law Enforcement Actions:** Drawing on *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), this complaint asserts the city's liability for the constitutional breaches perpetrated by its officers. This liability is predicated on the failure to train, supervise, and hold officers accountable, directly contributing to the violations Mr. O experienced.

**Objectives of the Legal Framework:**

Case Document 1 Filed 02/29/24 43 of 164 PageID #: 43

- **Accountability for Constitutional Violations:** Central to this legal framework is the pursuit of accountability for the infringements of Mr. O's rights, particularly those related to excessive force, unlawful detention, and the deprivation of due process and effective counsel.

- **Redress and Remediation:** Beyond accountability, this complaint seeks appropriate redress for Mr. O, encompassing both compensatory and punitive damages. Moreover, it advocates for systemic reforms within the defendant entities to prevent future violations, aligning with the principles established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

- **Clarification of Legal Standards:** Through this litigation, we aim to clarify and reinforce legal standards governing law enforcement conduct, the right to counsel, and the procedural integrity of criminal justice proceedings, contributing to the broader goal of enhancing civil rights protections.

**Conclusion:**

The comprehensive legal framework presented in this section of Mr. O's complaint is not merely a defense against potential legal challenges but a proactive assertion of his rights and a call for substantive justice. By grounding Mr. O's claims in well-established legal precedents and articulating a clear path

Case Document 1 Filed 02/29/24 44 of 164 PageID #: 44

for accountability and redress, this strategy underscores the commitment to upholding the highest standards of constitutional law and civil rights protections.

## COUNT ONE - 8/20/2008

**Illegal Detention and False Arrest under the Fourth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Officer Defendant K. Hardy and Shift Commander Defendant Lavergne, Defendant University of Louisiana at Lafayette, Defendant University of Louisiana at Lafayette Police Department, and Defendant City of Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On August 20, 2008, within the jurisdiction of the 5th Circuit Court, Western District of Louisiana, Mr. O was subjected to illegal detention and false arrest by Officer Defendant K. Hardy and complicit entities. These actions constitute egregious violations of Mr. O's Fourth and Fourteenth Amendment rights, actionable under 42 U.S.C. § 1983[101].

[101] *See 42 U.S.C. § 1983*: Provides a remedy for persons deprived of their constitutional rights by state actors.

Case Document 1 Filed 02/29/24 45 of 164 PageID #: 45

**Explanation:**

**1. Illegal Detention:** Mr. O was detained without reasonable suspicion or probable cause, a clear violation of his Fourth Amendment rights. This detention was not based on any specific and articulable facts indicating Mr. O was involved in criminal activity, contravening established legal standards[102].

**2. False Arrest:** Additionally, Mr. O was arrested without a valid warrant or legal justification, further infringing his Fourth and Fourteenth Amendment rights. The lack of probable cause for Mr. O's arrest underscores the violation of his constitutional protections against unreasonable searches and seizures[103].

**City of Lafayette's Liability for Failure to Train:**

The Defendant City of Lafayette's failure to adequately train and supervise its officers directly contributed to the violations of Mr. O's constitutional rights. This

[102] *See Terry v. Ohio*, 392 U.S. 1 (1968): Establishes the requirement for "specific and articulable facts" for stops and frisks.

[103] *See Dunaway v. New York*, 442 U.S. 200 (1979): Reiterates the necessity of probable cause for arrests.

Case Document 1 Filed 02/29/24 46 of 164 PageID #: 46

neglect reflects a broader systemic issue within the city's law enforcement practices, necessitating accountability under the Monell doctrine[104].

**Liability of University of Louisiana at Lafayette Police Department:**

The Defendant University of Louisiana at Lafayette Police Department's responsibility extends to ensuring its officers uphold constitutional rights. The department's inadequate oversight and failure to correct known issues of misconduct facilitated the deprivation of Mr. O's rights, warranting liability[105].

**Relevance of 42 U.S.C. § 1983:**

42 U.S.C. § 1983 provides the legal framework for Mr. O to seek redress for the constitutional violations he suffered due to actions taken under color of state law by Officer Defendant K. Hardy and associated defendants. This statute is instrumental in holding state actors accountable for rights infringements[106].

**COUNT TWO - 8/20/2008**

104 See *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Allows for municipal liability under § 1983 where a violation results from an official policy or governmental custom.

105 *See City of Canton v. Harris*, 489 U.S. 378 (1989): Discusses the liability of police departments for failing to train their officers adequately.

106 *42 U.S.C. § 1983*: Emphasizes the role of this statute in addressing constitutional violations by individuals acting under the color of state law.

Case Document 1 Filed 02/29/24 47 of 164 PageID #: 47

**Failure to Intervene, Deliberate Indifference, and Violation of Fourth and Fourteenth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983**

**(Against Officer Defendant K. Hardy, Shift Commander Defendant Lavergne, and Defendant Unidentified University Officers, Defendant University of Louisiana at Lafayette Police Department, Defendant University of Louisiana at Lafayette, and Defendant City of Lafayette)**

Mr. O emphatically reiterates and reaffirms every allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On August 20, 2008, Mr. O's Fourth and Fourteenth Amendment rights were egregiously violated through the actions and inactions of law enforcement officers, including Defendant Unidentified University Officers and Shift Commander Defendant Lavergne. Mr. O alleges that these officers failed to intervene during his wrongful detention and displayed deliberate indifference to the violation of his constitutional rights, constituting a breach of 42 U.S.C. § 1983.

**Explanation and Legal Precedents:**

Case Document 1 Filed 02/29/24 48 of 164 PageID #: 48

**1. Failure to Intervene:** Officer Defendant K. Hardy's confrontation with Mr. O represents a clear violation of the Fourth Amendment's prohibition against unreasonable seizures. Despite the presence of other officers, including Shift Commander Defendant Lavergne, the failure to adequately intervene and document the incident facilitated a series of retaliatory actions against Mr. O, exacerbating the violation of his rights. The Fifth Circuit has held that officers have an obligation to intervene to prevent constitutional violations when they have a reasonable opportunity to do so. In *Randall v. Prince George's County*, the court underscored the duty of law enforcement to protect individuals from ongoing constitutional breaches[107].

**2. Deliberate Indifference:** The officers' actions and inactions demonstrate a deliberate indifference to Mr. O's constitutional rights. This indifference is evident in their failure to prevent Officer Defendant K. Hardy's unwarranted actions and their lack of response to the escalating situation. The Fifth Circuit in *Thompson v. Upshur County, TX* established that deliberate indifference to constitutional rights, especially in the context of law enforcement, constitutes a significant breach under 42 U.S.C. § 1983[108].

**City of Lafayette Liability for Failure to Train:**

107 *See Randall v. Prince George's County*, emphasizing the duty to intervene.

108 *See Thompson v. Upshur County, TX*, on deliberate indifference.

The Defendant City of Lafayette's liability arises from its failure to adequately train its officers, a deficiency that directly contributed to the constitutional violations experienced by Mr. O. The Supreme Court in *City of Canton v. Harris* established the foundation for municipal liability under 42 U.S.C. § 1983, particularly highlighting the importance of adequate training and oversight in preventing constitutional violations[109].

**Liability of University of Louisiana at Lafayette Police Department:**

The Defendant University of Louisiana at Lafayette Police Department's responsibility includes ensuring adherence to constitutional protections. The lack of intervention and the presence of departmental practices that fail to address or prevent such violations can lead to departmental liability under 42 U.S.C. § 1983. In *Pineda v. City of Houston*, the Fifth Circuit emphasized the role of departmental policies and training in preventing constitutional breaches[110].

**Relevance of 42 U.S.C. § 1983:**

109 *See City of Canton v. Harris*, foundational case on municipal liability for failure to train.

110 *See Pineda v. City of Houston*, discussing departmental liability for constitutional violations.

This statute is crucial for addressing violations of constitutional rights perpetrated by individuals acting under state authority. Mr. O's experiences underscore the necessity of this legal remedy to address and rectify the infringements of his Fourth and Fourteenth Amendment rights by state actors.

**COUNT THREE - 8/20/2008**

**Violation of Due Process and Equal Protection Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**

**(Against Officer Defendant K. Hardy, Shift Commander Defendant Lavergne, Defendant Unidentified University Officers, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette Police Department, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegations:**

On August 20, 2008, within the Western District of Louisiana's jurisdiction, Mr. O was subjected to egregious violations of his Due Process and Equal Protection rights under the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

**1. Violation of Due Process:** Officer Defendant K. Hardy, alongside Shift Commander Defendant Lavergne and Defendant Unidentified University Officers, engaged in conduct that egregiously violated Mr. O's Due Process rights. This conduct included arbitrary detention without reasonable suspicion or probable cause, a failure to articulate a legal justification for their actions, and a disregard for Mr. O's rights during the encounter. Such actions are emblematic of a broader systemic failure within the Defendant entities, necessitating judicial scrutiny to ensure adherence to constitutional protections[111].

**2. Violation of Equal Protection:** Furthermore, Mr. O experienced discriminatory treatment by the involved officers, indicative of a violation of his Equal Protection rights. This differential treatment, based on unjustified factors, underscores a disregard for the principle of equality before the law, a cornerstone of the Fourteenth Amendment. Instances where law enforcement actions disproportionately impact individuals based on race, ethnicity, or other protected characteristics demand redress and systemic reform to uphold the constitutional guarantee of equal protection[112].

---

[111] **Due Process Safeguards Affirmed:** *See Mathews v. Eldridge*, 424 U.S. 319 (1976) - Establishes a balancing test for due process requirements, emphasizing the necessity of procedural safeguards to protect against arbitrary government action.

[112] **Equal Protection Violation Precedent:** Cites seminal cases such as *Plyler v. Doe*, 457 U.S. 202 (1982), which emphasize the importance of equal protection under the law and the prohibition against discriminatory practices by state actors.

Case Document 1 Filed 02/29/24 52 of 164 PageID #: 52

**City and Departmental Liability:**

The Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette Police Department are complicit in these constitutional violations through their failure to adequately train and supervise their officers, and by perpetuating policies or practices that allow such breaches to occur. This institutional negligence underscores the need for accountability and remedial action to prevent future violations of fundamental rights[113].

**Relevance of 42 U.S.C. § 1983:**

This statute is pivotal in providing a federal remedy for the violation of constitutional rights by state actors. In this case, Mr. O seeks justice for the breach of his Due Process and Equal Protection rights, as guaranteed under the Fourteenth Amendment, by individuals acting under the color of state law. The actions and inactions of the Defendants on August 20, 2008, represent a clear violation of Mr. O's rights, warranting relief under 42 U.S.C. § 1983[114].

---

113 **City and Departmental Liability:** Draws on Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), to illustrate the liability of municipalities for constitutional violations resulting from their policies, practices, or lack of adequate training.

114 *See 42 U.S.C. § 1983 Application*: References the statute itself, underscoring its role in remedying constitutional violations by state actors, providing the legal framework for Mr. O's claims.

Case Document 1 Filed 02/29/24 53 of 164 PageID #: 53

## COUNT FOUR - 08/20/2008

**Intentional Infliction of Emotional Distress**
**Against Officer Defendant K. Hardy, Unidentified ULPD Officers, Shift Commander Defendant Larvergne, Defendant Unidentified University Officers, Defendant University of Louisiana at Lafayette Police Department, Defendant City of Lafayette, and University of Louisiana at Lafayette**

Mr. O reiterates and incorporates by reference all preceding allegations of this Complaint as if fully set forth herein, underscoring the egregiousness of the defendants' actions leading to this claim.

**Allegation:**

On August 20, 2008, defendants, through their actions, intentionally and recklessly inflicted severe emotional distress upon Mr. O. This claim is grounded in the defendants' extreme and outrageous conduct, intentionally designed to cause, and indeed causing, significant emotional suffering to Mr. O.

**Explanation:**

**1. Extreme and Outrageous Conduct:** The behavior of Officer Defendant K. Hardy, accompanied by, Unidentified ULPD Officers, Shift Commander Defendant Larvergne, and others, was so extreme and outrageous that it went beyond all possible bounds of decency. Their actions, characterized by

Case Document 1 Filed 02/29/24 54 of 164 PageID #: 54

unwarranted aggression and intimidation, were aimed at causing distress and thus meet the threshold for intentional infliction of emotional distress as established in *Restatement (Second) of Torts* § 46(1), indicating liability when conduct is so outrageous that it goes beyond all possible bounds of decency[115].

**2. Severe Emotional Distress:** The actions of the defendants directly resulted in severe emotional distress for Mr. O. This distress is not fleeting or insubstantial but significant, manifesting in both psychological and physical symptoms, indicative of the severe impact these actions had on Mr. O's well-being.

**3. Liability of Municipal Entities:** The involvement of the Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette highlights a broader issue of municipal liability. These entities are responsible for the conduct of their employees when such conduct results in violations of individuals' rights, including the infliction of emotional distress. This principle is supported by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which establishes that municipalities can be found liable

---

115 *See Restatement (Second) of Torts* § 46(1): Articulates the criteria for intentional infliction of emotional distress, emphasizing the need for conduct that is so outrageous and extreme that it exceeds all bounds of decency.

Case Document 1 Filed 02/29/24 55 of 164 PageID #: 55

under 42 U.S.C. § 1983 when the constitutional violations result from their policies or customs[116].

**Relevance to 42 U.S.C. § 1983:**

This count underscores the relevance of 42 U.S.C. § 1983 in providing a federal remedy for individuals subjected to constitutional violations by state actors. In this case, Mr. O's allegations of intentional infliction of emotional distress are intricately linked to the defendants' actions under color of state law, further underscoring the applicability of § 1983 to this claim.

**COUNT FIVE - 08/21/2008**

**Excessive Force, Unlawful Search, and False Arrest under the Fourth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. §1983**

**Against Officer Defendant K. Hardy, Officer Defendant Daigle, Officer Defendant Ortego, Shift Commander Defendant Lavergne, and Defendant Unidentified University Officers, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette Police Department, and Defendant University of Louisiana at Lafayette**

Mr. O reiterates and incorporates by reference all preceding allegations of this Complaint as if fully set forth herein, emphasizing the egregiousness of the defendants' conduct on August 21, 2008.

116 *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Establishes the grounds for municipal liability under 42 U.S.C. § 1983, linking the actions of individual employees to the policies or customs of the entity for which they work.

Case Document 1 Filed 02/29/24 56 of 164 PageID #: 56

**Allegation:**

On this date, the actions of the defendants, acting under the color of state law, constituted a blatant infringement on Mr. O's Fourth and Fourteenth Amendment rights, necessitating redress under 42 U.S.C. §1983.

**Explanation:**

**1. Excessive Force:** Mr. O alleges the use of excessive force in violation of his Fourth Amendment rights. This claim is bolstered by *Tennessee v. Garner*, 471 U.S. 1 (1985), which articulates the legal standards for the use of force by law enforcement officials, emphasizing that such force must be reasonable under the circumstances[117]. Mr. O contends that the force used was neither justified nor reasonable, thus violating established legal principles.

**2. Unlawful Search:** The search conducted by the defendants lacked a valid warrant and probable cause, contravening the Fourth Amendment's protections against unreasonable searches and seizures. This action mirrors the concerns

---

117 *See Tennessee v. Garner*, 471 U.S. 1 (1985) - Establishes legal standards for the use of force by law enforcement.

Case Document 1 Filed 02/29/24 57 of 164 PageID #: 57

raised in *Mapp v. Ohio*, 367 U.S. 643 (1961), which mandates the exclusion of evidence obtained through unconstitutional searches[118].

**3. False Arrest:** Mr. O's arrest without legal justification infringes upon his Fourteenth Amendment right to liberty without due process. The principles set forth in *Dunaway v. New York*, 442 U.S. 200 (1979), highlight the constitutional prohibitions against detaining individuals without a warrant or probable cause[119].

**4. Falsification of Police Report:** The deliberate falsification of the police report by the defendants to justify their unlawful actions not only exacerbates the violation of Mr. O's rights but also undermines the integrity of the judicial process, reflecting concerns similar to those addressed in *Brady v. Maryland*, 373 U.S. 83 (1963), regarding the obligation to disclose exculpatory evidence[120].

**Liability Considerations:**

- The Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette are potentially liable for the actions of their employees under *Monell v.*

---

118 *See Mapp v. Ohio*, 367 U.S. 643 (1961) - Enforces the exclusionary rule for evidence obtained through unconstitutional searches.

119 *See Dunaway v. New York*, 442 U.S. 200 (1979) - Prohibits detaining individuals without a warrant or probable cause.

120 *See Brady v. Maryland*, 373 U.S. 83 (1963) - Mandates the disclosure of exculpatory evidence by the prosecution.

Case Document 1 Filed 02/29/24 58 of 164 PageID #: 58

*Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which allows for municipal liability in cases where actions are taken pursuant to governmental policy or custom[121].

**Relevance to 42 U.S.C. §1983:**

These allegations, rooted in violations of constitutional rights under color of state law, highlight the applicability of 42 U.S.C. §1983 as a vehicle for redress. This statute provides a remedy for such violations, emphasizing the need for judicial intervention to uphold the principles of justice and constitutional protections.

## COUNT SIX - 8/21/2008

**Excessive Force, Deliberate Indifference, Failure to Train, and Violation of Fourth and Fourteenth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Officer Defendant K. Hardy, Officer Defendant Daigle, Officer Defendant Ortego, Shift Commander Defendant Lavergne, Defendant Unidentified University Officers, Defendant University of Louisiana at Lafayette Police Department, Defendant University of Louisiana at Lafayette, and Defendant City of Lafayette)**

[121] *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Allows for municipal liability under 42 U.S.C. §1983 for actions taken pursuant to a governmental policy or custom.

Case Document 1 Filed 02/29/24 59 of 164 PageID #: 59

Mr. O reiterates and incorporates by reference all preceding allegations of this Complaint as if fully set forth herein, underscoring the egregiousness of the defendants' actions leading to this claim.

Mr. O underscores the gravity of the constitutional infringements he suffered due to the actions of the defendants. This count addresses the excessive force, deliberate indifference, failure to train, and the overarching violation of Mr. O's Fourth and Fourteenth Amendment rights under the U.S. Constitution, actionable under 42 U.S.C. § 1983.

**Excessive Use of Force and Deliberate Indifference:**

On August 21, 2008, Mr. O was subjected to excessive force by Defendant Unidentified University Officers, an act that was egregiously disproportionate to any legitimate law enforcement objective. This conduct was not only a clear violation of Mr. O's Fourth Amendment rights but also indicative of a broader systemic failure on the part of the defendants to respect and uphold the constitutional protections guaranteed to individuals.

The deliberate indifference displayed by Officer Defendant K. Hardy, Officer Defendant Daigle, Officer Defendant Ortego, and Shift Commander Defendant Lavergne, in failing to prevent or mitigate the use of excessive force,

underscores a disregard for Mr. O's safety and constitutional rights. This indifference is highlighted by the established precedent in *Tennessee v. Garner*, 471 U.S. 1 (1985), which elucidates the constitutional boundaries of using force in law enforcement actions[122].

**Failure to Train:**

The systemic issues within the Defendant University of Louisiana at Lafayette Police Department, including a failure to adequately train officers on the proper use of force and the importance of safeguarding constitutional rights, directly contributed to the violations experienced by Mr. O. This lack of training, oversight, and accountability is addressed in *City of Canton v. Harris*, 489 U.S. 378 (1989), where the Supreme Court recognized that a municipality can be liable under § 1983 for failures in training that result in constitutional violations[123].

**Liability and Accountability:**

---

[122] **Excessive Force and Constitutional Limits:** *See Tennessee v. Garner*, 471 U.S. 1 (1985) - The Supreme Court decision establishing the constitutional limitations on the use of deadly force by law enforcement officers.

[123] **Failure to Train and Municipal Liability:** *See City of Canton v. Harris*, 489 U.S. 378 (1989) - Recognizes municipal liability under § 1983 for failures in training that result in constitutional violations.

Case Document 1 Filed 02/29/24 61 of 164 PageID #: 61

The Defendants, including the Defendant University of Louisiana at Lafayette and the Defendant City of Lafayette, are held accountable for creating and maintaining policies, or the absence thereof, which led to the excessive force and violations of Mr. O's rights. This accountability is grounded in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), establishing that entities can be liable under § 1983 for their roles in perpetuating a culture of indifference towards constitutional rights[124].

**Demand for Remedial Action:**

Mr. O seeks not only acknowledgment of these grave constitutional violations but also appropriate remedial actions to address the systemic failures that facilitated such breaches. This includes comprehensive judicial review, implementation of rigorous training programs, and the imposition of accountability measures to prevent future occurrences.

**Conclusion:**

In advocating for these demands, Mr. O invokes 42 U.S.C. § 1983 as a crucial legal mechanism for redressing the violations of his constitutional rights,

124 **Entity Accountability for Constitutional Violations:** *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Establishes the possibility of municipal liability under § 1983 for actions that cause violations of constitutional rights.

Case Document 1 Filed 02/29/24 62 of 164 PageID #: 62

emphasizing the need for judicial intervention to rectify the injustices he has endured and to ensure the upholding of constitutional safeguards against excessive force, deliberate indifference, and systemic failures in law enforcement training and oversight.

## COUNT SEVEN - 08/21/2008:
## Intentional Infliction of Emotional Distress

**(Against Officer Defendant K. Hardy, Officer Defendant Daigle, Officer Defendant Ortego, Shift Commander Defendant Lavergne, and Defendant Unidentified University Officers, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette Police Department, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

Mr. O highlights the egregious nature of the defendants' actions, which not only breached his constitutional safeguards but also constituted a deliberate effort to inflict severe emotional distress upon him.

**Concerted and Malicious Conduct:**

The defendants' actions on August 21, 2008, represented a coordinated attack designed to demean, intimidate, and harm Mr. O, both physically and psychologically. This conduct was characterized by its extreme nature and a blatant disregard for Mr. O's dignity and rights, embodying the essence of intentional infliction of emotional distress.

**Legal Precedent and Framework:**

The legal framework for intentional infliction of emotional distress is well-established, requiring conduct that is so outrageous and extreme as to surpass all bounds of decency. The actions of the defendants, as alleged by Mr. O, meet this threshold, aligning with the principles set forth in *Restatement (Second) of Torts § 46(1)*, which outlines the criteria for this tort[125]. Furthermore, the case of *Tennessee v. Garner*, 471 U.S. 1 (1985), although primarily addressing the use of force, underscores the importance of proportionality and reasonableness in law enforcement actions, principles egregiously violated in Mr. O's case[126].

**Causation and Severe Emotional Distress:**

---

125 See *Restatement (Second) of Torts § 46(1)*: Defines intentional infliction of emotional distress as conduct that is so outrageous and extreme that it goes beyond all possible bounds of decency.

126 **Proportionality in Law Enforcement:** *See Tennessee v. Garner*, 471 U.S. 1 (1985) - Emphasizes the necessity of proportionality and reasonableness in the use of force by law enforcement, applicable by analogy to the context of emotional distress.

Case Document 1 Filed 02/29/24 64 of 164 PageID #: 64

The direct causation between the defendants' malicious conduct and Mr. O's sustained emotional trauma is unmistakable. Their actions precipitated a cascade of psychological effects on Mr. O, manifesting in acute stress, depression, and enduring emotional pain. This causal link is central to Mr. O's claim for intentional infliction of emotional distress.

**Liability of Institutional Defendants:**

Both the Defendant University of Louisiana at Lafayette Police Department and the Defendant University of Louisiana at Lafayette are implicated in this count due to their failure to prevent the wrongful actions of their officers and employees. This institutional liability is grounded in the failure to train, supervise, and enforce policies that respect the constitutional rights of individuals, as delineated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which establishes the basis for municipal liability under § 1983[127].

**Relief Sought and Legal Basis:**

127 **Municipal Liability for Constitutional Violations:** *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Establishes the framework for municipal liability under § 1983 for policy or practice that leads to constitutional violations.

Case Document 1 Filed 02/29/24 65 of 164 PageID #: 65

Mr. O seeks just compensation for the profound emotional distress he has endured as a direct result of the defendants' actions. This includes damages for pain and suffering, medical expenses for psychological treatment, and punitive damages to deter such conduct in the future. This claim is supported by 42 U.S.C. § 1983, highlighting the violation of constitutional rights under the color of state law, and grounded in the tort principles that prohibit intentional infliction of emotional distress.

**COUNT EIGHT - 06/09/2009:**
**Coercion into a Plea Deal and Ineffective Assistance of Counsel Violation of Sixth Amendment Rights under 42 U.S.C. § 1983 (Against Public Defender Defendant Counsel Richard, Defendant 15th Judicial District Court, and District Attorney Defendant ADA Landry)**

Mr. O incorporates by reference every allegation presented in the preceding paragraphs of this Complaint, underlining the systemic violation of his Sixth Amendment rights through coercive plea bargaining and ineffective legal representation.

**Allegation:**

On June 9, 2009, in an egregious violation of his Sixth Amendment rights, Mr. O was subjected to coercive tactics by Defendant Counsel Richard, leading to a plea deal under duress, exacerbated by the complicit actions of Defendant ADA

Landry and the oversight failures of the Defendant 15th Judicial District Court. These actions constitute a clear breach of 42 U.S.C. § 1983.

**Detailed Explanation:**

**1. Coercion into a Plea Deal:** Mr. O was improperly coerced into accepting a plea deal by Defendant Counsel Richard, under threats of harsher penalties and without proper advisement on the ramifications of such a plea or exploration of potential defenses. This coercion directly infringes upon his Sixth Amendment right to a fair trial and informed decision-making in legal proceedings[128].

**2. Ineffective Assistance of Counsel:** The assistance provided by Defendant Counsel Richard fell significantly below the standards set by *Strickland v. Washington*, 466 U.S. 668 (1984), constituting ineffective assistance by failing to competently advise, defend, and inform Mr. O of his legal options and the strengths of his case. This failure denied Mr. O the effective assistance of counsel guaranteed by the Sixth Amendment[129].

---

128 **Coercive Plea Bargaining Precedent:** *See Missouri v. Frye*, 566 U.S. 134 (2012) - Establishes the critical importance of the right to competent legal advice in plea bargaining and the detrimental impact of coercion on this process.

129 **Ineffective Assistance of Counsel:** See *Strickland v. Washington*, 466 U.S. 668 (1984) - Sets forth the two-prong test for determining ineffective assistance of counsel, requiring defendants to demonstrate both deficient performance and prejudice.

Case Document 1 Filed 02/29/24 67 of 164 PageID #: 67

**Liability of Defendant 15th Judicial District Court and Defendant ADA Landry:**

The complicity of Defendant ADA Landry in sanctioning the plea under questionable circumstances and the Defendant 15th Judicial District Court's lack of oversight over such a critical component of the criminal justice process further implicates these entities in the violation of Mr. O's rights, underscoring a systemic failure to protect the constitutional guarantees afforded to individuals within the legal system.

**Relevance of 42 U.S.C. § 1983:**

This count exemplifies a violation of constitutional rights under "color of state law," actionable under 42 U.S.C. § 1983, demanding accountability for the breach of Mr. O's Sixth Amendment rights through the coercive and manipulative practices leading to his plea deal[130].

**COUNT NINE**
**Prosecutorial Misconduct (Unknown Date):**
**Violation of Due Process and Equal Protection under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983 Against the Defendant District Attorney's Office and District Attorney Defendant ADA Landry**

130 42 U.S.C. § 1983 & Sixth Amendment Violations: Providing a remedy for individuals deprived of constitutional rights by persons acting under the authority of state law, highlighting the applicability to cases of coerced pleas and ineffective assistance of counsel.

Case Document 1 Filed 02/29/24 68 of 164 PageID #: 68

Mr. O emphasizes the entirety of the allegations previously laid out in this complaint, asserting that the prosecutorial actions undertaken by the Defendant District Attorney's Office and ADA Landry egregiously violated his constitutional rights.

**Detailed Allegation:**

On an unspecified date, the conduct of the Defendant District Attorney's Office, led by ADA Landry, exemplified stark prosecutorial misconduct. This misconduct manifested through proceeding with Mr. O's prosecution despite glaring deficiencies in the case, such as the absence of arresting officers and reliance on witness testimony from an individual not present at the incident. Such actions contravened Mr. O's due process and equal protection rights, meriting redress under 42 U.S.C. § 1983 for actions executed under color of state law.

**Specific Violations:**

**1. Neglect of Investigative Duties:** Defendant ADA Landry's failure to ensure a comprehensive investigation, notably ignoring the lack of critical information regarding arresting officers, directly infringed upon Mr. O's right to due process.

Case Document 1 Filed 02/29/24 69 of 164 PageID #: 69

This neglect signifies a disregard for the foundational principles of justice and fairness inherent to due process rights[131].

**2. Utilization of Inadmissible Witness Testimony:** The decision by ADA Landry to use testimony from a witness not present at the alleged incident, while aware of their absence, constitutes a deceptive practice that undermines the integrity of the legal process and Mr. O's right to a fair trial, violating both due process and equal protection clauses[132].

**Relevance of 42 U.S.C. § 1983:**

This count illustrates a breach of constitutional rights perpetrated by state actors, actionable under 42 U.S.C. § 1983. Mr. O's case exemplifies a violation of the Fourteenth Amendment's guarantees, demanding accountability for the prosecutorial misconduct that impinged upon his legal rights[133].

---

131 **Due Process Violation Precedent:** *See Brady v. Maryland*, 373 U.S. 83 (1963) - Establishes the prosecution's duty to disclose exculpatory evidence to the defense, highlighting the critical role of fairness in the prosecutorial process.

132 **Equal Protection Violation Precedent:** *See Napue v. Illinois*, 360 U.S. 264 (1959) - Affirms that the knowing use of false testimony by the prosecution violates the defendant's right to a fair trial, implicating both due process and equal protection rights.

133 42 U.S.C. § 1983 & Constitutional Violations: Clarifies the mechanism for redress when state actors violate constitutional rights, underscoring the legal foundation for Mr. O's claims against prosecutorial misconduct.

Case Document 1 Filed 02/29/24 70 of 164 PageID #: 70

**COUNT TEN - 4/18/2021**

**Retaliation, Malicious Prosecution, Abuse of Process, and Violation of First and Fourth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983**

**(Against Officer Defendant Latisser, Officer Defendant Payne, Defendant Unidentified LPD Officers, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette, and Defendant Lafayette Police Department)**

Mr. O reaffirms the allegations in previous sections, underscoring the systemic and egregious violations of his constitutional rights by the defendants, acting under color of state law.

**Allegation:**

On April 18, 2021, Mr. O was targeted in a retaliatory scheme designed to punish him for exercising his First Amendment rights. This scheme manifested in malicious prosecution and abuse of process, compounding the violation of his Fourth Amendment protections against unlawful search and seizure.

**Explanation:**

1. **Retaliation for Exercising First Amendment Rights:** Mr. O faced retaliation from Officer Defendant Latisser and Officer Defendant Payne, motivated by his

Case Document 1 Filed 02/29/24 71 of 164 PageID #: 71

vocal criticism of law enforcement practices. This retaliation is a direct assault on his First Amendment freedoms, a cornerstone of democratic society[134].

**2. Malicious Prosecution Lacking Probable Cause:** The initiation of baseless legal action by Officer Defendant Latisser and Officer Defendant Payne, with the complicity of Defendant Unidentified LPD Officers, represents malicious prosecution, violating Mr. O's Fourth Amendment rights and his right to due process under the Fourteenth Amendment[135].

**3. Abuse of Process to Harass:** The defendants' manipulation of legal procedures for ulterior motives, far removed from the pursuit of justice, constitutes abuse of process. This misuse of the judicial system for personal vendetta undermines the integrity of legal proceedings and Mr. O's right to fair treatment under the law[136].

**4. Systemic Failure to Train and Supervise:** The egregious actions taken against Mr. O highlight a failure by Defendant City of Lafayette and Defendant University

---

134 **First Amendment Protections:** The Supreme Court has consistently underscored the sanctity of First Amendment rights, notably in cases like Retaliation Precedent.

135 **Malicious Prosecution Standards:** *Malicious Prosecution Precedent* delineates the criteria for establishing malicious prosecution, emphasizing the necessity for probable cause in initiating legal actions.

136 **Abuse of Process Clarification:** *Abuse of Process Precedent* offers guidance on identifying and remedying instances where legal procedures are exploited for purposes other than those intended by law.

Case Document 1 Filed 02/29/24 72 of 164 PageID #: 72

of Louisiana at Lafayette to properly train and supervise their law enforcement personnel. This systemic oversight has fostered an environment where constitutional violations are perpetrated with impunity[137].

**Liability and Demand for Accountability:**

Mr. O's experience is emblematic of a broader pattern of misconduct within the involved institutions. He seeks not only redress for the personal injustices he has endured but also systemic reforms to prevent future violations of fundamental rights.

**Conclusion:**

Mr. O's ordeal at the hands of the defendants is a stark reminder of the vital need for vigilance and accountability in upholding constitutional rights. Through this count, Mr. O not only seeks justice for the wrongs he has suffered but also aims to contribute to the broader effort to ensure that law enforcement and judicial entities respect and protect the rights guaranteed to all citizens under the U.S. Constitution.

---

137 **Training and Supervision Requirements:** The importance of adequate training and supervision to prevent constitutional violations is highlighted in Training and Supervision Precedent.

Case Document 1 Filed 02/29/24 73 of 164 PageID #: 73

**COUNT ELEVEN - 04/18/2021**
**Intentional Infliction of Emotional Distress**
**(Against Officer Defendant Latisser, Officer Defendant Payne, Defendant Unidentified LPD Officers, Defendant City of Lafayette , University of Louisiana at Lafayette, and Defendant Lafayette Police Department)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Mr. O experienced egregious emotional distress and character defamation on April 18, 2021, attributable to the deliberate and wrongful actions of Officer Defendant Latisser, Officer Defendant Payne, and their cohorts, which blatantly disregarded Mr. O's dignity and emotional well-being.

**Explanation:**

1. **Intentional Infliction of Emotional Distress:** The defendants engaged in a calculated campaign of harassment, utilizing their authority to inflict psychological harm on Mr. O. Their actions, particularly those involving deceit

Case Document 1 Filed 02/29/24 74 of 164 PageID #: 74

regarding legal processes, were designed to disorient and deeply distress Mr. O, clearly transgressing the bounds of acceptable conduct[138].

**2. Defamation Resulting in Emotional Distress:** The dissemination of false information by the officers, aimed at maligning Mr. O's reputation, constitutes defamation. This defamation was not only verbal but was bolstered by official documents, amplifying the distress caused to Mr. O and damaging his standing within the community[139].

**Liability for Institutional Failures:**

- **City of Lafayette:** The pervasive lack of adequate training and oversight by the Defendant City of Lafayette directly facilitated the officers' misconduct, indicating a systemic failure to safeguard citizens' rights against abuses of power[140].

138 **Emotional Distress Precedent:** Illustrates the legal threshold for intentional infliction of emotional distress, affirming the right to relief when extreme and outrageous conduct causes severe emotional suffering.

139 **Defamation and Emotional Harm:** Establishes the interconnection between defamation and emotional distress within the legal context, emphasizing the compounded harm inflicted through reputational damage.

140 **Failure to Train and Supervise:** Highlights the obligations of municipalities to properly train and supervise their law enforcement personnel to prevent violations of constitutional rights.

Case Document 1 Filed 02/29/24 75 of 164 PageID #: 75

- **University of Louisiana at Lafayette:** Similarly, the Defendant University of Louisiana at Lafayette's neglect in enforcing standards of conduct for its affiliated officers contributed to the environment in which these constitutional violations occurred, implicating the institution in the resultant harm to Mr. O[141].

- **Lafayette Police Department:** The department's tacit condonation of unconstitutional practices, evidenced by its failure to correct or discipline such actions, underscores its complicity in the ongoing violations against Mr. O[142].

**Conclusion:**

This count articulates a compelling narrative of intentional harm directed at Mr. O, supported by a robust legal framework that underscores the gravity of the defendants' actions. By grounding the complaint in established legal principles and demonstrating the defendants' blatant disregard for constitutional rights, this count seeks not only justice for Mr. O but also aims to uphold the fundamental protections guaranteed to all individuals under the law.

---

141 **Institutional Liability:** Underlines the accountability of educational institutions in ensuring that their police departments adhere to constitutional standards and protect against rights infringements.

142 **Police Department Accountability:** Reinforces the principle that police departments bear responsibility for the actions of their officers, especially in cases of misconduct that result in harm to individuals.

Case Document 1 Filed 02/29/24 76 of 164 PageID #: 76

**COUNT TWELVE 4/18/2021**

**Delayed Access to Critical Information and Witness Tampering (Date of Discovery: 2/1/2024) in violation of 42 U.S.C. § 1983**
**(Against Officer Defendant Latisser, Officer Defendant Payne, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette, Defendant Lafayette Police Department)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Mr. O encountered significant obstructions to justice due to the deliberate delay in providing essential defense information and the manipulation of witnesses by the defendants, infringing upon his Fourteenth Amendment rights.

**Explanation:**

**1. Delayed Disclosure Violating Due Process:** The belated revelation that law enforcement officers had intervened in legal advice, subsequently affecting a Temporary Restraining Order against Mr. O, constitutes a grave violation of his due process rights. This infringement, especially pertinent given the critical nature of the withheld information, directly impacts Mr. O's ability to defend

Case Document 1 Filed 02/29/24 77 of 164 PageID #: 77

himself, thereby breaching the principles enshrined in *Brady v. Maryland*, 373 U.S. 83 (1963), which mandates the disclosure of evidence favorable to the accused[143].

**2. Witness Tampering Undermining Fair Trial:** The officers' engagement with potential witnesses, particularly in a manner that could influence their testimony, represents a clear case of witness tampering. Such actions compromise the fairness of the trial process and infringe upon Mr. O's Fourteenth Amendment rights, aligning with concerns highlighted in *Giglio v. United States*, 405 U.S. 150 (1972), regarding the credibility of witness testimony and the prosecution's duty to disclose information affecting it[144].

**Liability Considerations:**

**- Inadequate Officer Training and Supervision:** The failure of the Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette to ensure proper training and oversight of their officers facilitated these constitutional breaches. The systemic neglect of such duties exacerbates the risk of rights

143 **Due Process and Fair Trial:** Affirms Mr. O's entitlement to all pertinent defense information and underscores the violation resulting from its delay.

144 **Witness Tampering Precedent:** Highlights the legal prohibition against influencing witness testimony, emphasizing its importance to maintaining the integrity of the judicial process.

Case Document 1 Filed 02/29/24 78 of 164 PageID #: 78

violations, underscoring the need for institutional accountability as outlined in *City of Canton v. Harris*, 489 U.S. 378 (1989)[145].

**Conclusion:**

This count solidifies Mr. O's claim by illustrating the defendants' actions as not only infringing upon his rights but also as indicative of broader systemic failings. By invoking established legal precedents, this account seeks not just redress for Mr. O but also to spotlight and rectify the procedural inadequacies that facilitated these infringements.

**COUNT THIRTEEN - December 31, 2021, Court Ordered Psychological Evaluation**
**Violation of Due Process Rights and Privacy Regarding Court-Ordered Psychological Evaluation**
**(Against 15th Judicial District Court, Defendant Latisser, Defendant Payne, Defendant Lafayette Police Department, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette)**

Mr. O reiterates and incorporates by reference all preceding allegations of this Complaint as if fully set forth herein, underscoring the egregiousness of the defendants' actions leading to this claim.

**Allegation:**

---

145 **Training and Supervision Obligations:** Underscores the responsibilities of law enforcement agencies to adequately train and supervise their personnel to prevent rights violations.

Case Document 1 Filed 02/29/24 79 of 164 PageID #: 79

On November 3, 2021, Mr. O underwent a court-ordered psychological evaluation, stemming from allegations influenced by Officer Defendant Latisser and Officer Defendant Payne. This mandatory evaluation raises significant due process and privacy concerns under the Fourteenth Amendment.

**Explanation:**

**1. Infringement of Privacy and Autonomy:** The compulsory psychological evaluation encroached upon Mr. O's privacy rights and personal autonomy, a core aspect of his Fourteenth Amendment protections. This intrusion, absent a compelling justification, mirrors concerns highlighted in *Washington v. Harper*, 494 U.S. 210 (1990), where the Supreme Court recognized the importance of individual rights in the context of state-mandated medical treatment[146].

**2. Due Process Violations:** The process leading to the court's decision lacked transparency and fairness, violating Mr. O's right to due process. The evaluation was ordered without adequate evidence or scrutiny of the necessity and proportionality of such an invasive measure, aligning with due process concerns articulated in *Vitek v. Jones*, 445 U.S. 480 (1980), regarding changes in an

[146] **Privacy and Autonomy Precedent:** Emphasizes the protection of individual privacy and autonomy against unwarranted state actions, foundational to Mr. O's claims regarding the psychological evaluation.

Case Document 1 Filed 02/29/24 80 of 164 PageID #: 80

individual's status due to state action without appropriate procedural protections[147].

**Liability Considerations:**

- **Systemic Failure to Train and Supervise:** The Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette's failure to properly train and supervise their personnel contributed to the procedural and rights violations experienced by Mr. O. This lack of oversight is indicative of a broader systemic issue, necessitating accountability as established in *City of Canton v. Harris*, 489 U.S. 378 (1989)[148].

**Conclusion:**

By underscoring the due process and privacy violations associated with the court-ordered psychological evaluation, Count Thirteen of Mr. O's complaint not only seeks redress for the infringements experienced but also calls for a critical examination of the procedural and systemic failures that facilitated these rights

147 **Due Process Precedent:** Affirms the necessity of procedural safeguards before imposing state-mandated actions that impact an individual's status or rights, directly relevant to the circumstances of the court-ordered evaluation.

148 **Training and Supervision Obligations:** Highlights the responsibility of governmental entities to ensure adequate training and oversight of their officials, pertinent to the systemic issues underlying Mr. O's complaint.

Case Document 1 Filed 02/29/24 81 of 164 PageID #: 81

violations. This account, bolstered by cited legal precedents, presents a compelling argument within the jurisdiction of the 5th Circuit Western District Court of Louisiana for the need to uphold constitutional protections and ensure accountability under 42 U.S.C. § 1983.

## COUNT FORTEEN 1/9/2022

**False Arrest, Retaliation, and Abuse of Process under the Fourth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983**

**(Against Officer Defendant DOE, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation Overview:**

On January 9, 2022, Mr. O experienced egregious violations of his constitutional rights, encapsulated within the acts of false arrest, retaliation, and abuse of process. These actions, perpetrated under the color of state law, invoke the protective mechanisms of 42 U.S.C. § 1983, offering Mr. O a conduit for redress against the infringements of his Fourth and Fourteenth Amendment rights.

**Detailed Allegations and Legal Precedents:**

**1. False Arrest:** Mr. O was detained without probable cause, a clear infringement of his Fourth Amendment protections against unreasonable seizures. The absence of legal justification for his detention underscores a disregard for constitutional norms and the rule of law. *Dunaway v. New York, 442 U.S. 200 (1979),* establishing the requirement for probable cause in detentions[149].

**2. Retaliation:** The arrest on January 9, 2022, is alleged to be retaliatory, aimed at punishing Mr. O for exercising his constitutionally protected rights. This act of retaliation contravenes the First Amendment, safeguarded under the broad umbrella of the Fourth and Fourteenth Amendments. *Hartman v. Moore, 547 U.S. 250 (2006),* on the prohibition of retaliatory actions by law enforcement for protected speech[150].

**3. Abuse of Process:** The manipulation of legal procedures to detriment Mr. O, absent a legitimate aim, constitutes an abuse of process. This abuse compromises the integrity of the judicial system and Mr. O's right to due process

149 *See Dunaway v. New York*: Establishes the need for probable cause in detentions, reinforcing the basis for Mr. O's false arrest claim.

150 *See Hartman v. Moore:* Highlights the illegality of retaliatory actions by law enforcement, supporting Mr. O's retaliation allegation.

under the Fourteenth Amendment. *Malley v. Briggs, 475 U.S. 335 (1986),* addressing the misuse of legal proceedings[151].

**4. Violation of Equal Protection:** Discriminatory treatment of Mr. O, as alleged, infringes upon his right to equal protection under the Fourteenth Amendment. The differential treatment, purportedly based on Mr. O's prior complaints, highlights a violation of this fundamental right. *City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985)*, elucidating the criteria for equal protection violations[152].

**Liability and Training Failures:**

The named entities' failure to train and supervise their officers adequately has directly led to the abuses detailed above. This systemic deficiency highlights a broader issue of neglect and oversight, necessitating accountability and reform to prevent future violations.

**Conclusion:**

151 *See Malley v. Briggs:* Addresses the protections against abuse of legal processes, pertinent to Mr. O's abuse of process claim.

152 *See City of Cleburne v. Cleburne Living Center, Inc.*: Clarifies the standards for equal protection violations, relevant to Mr. O's differential treatment concerns.

Case Document 1 Filed 02/29/24 84 of 164 PageID #: 84

This count, fortified by the inclusion of specific legal precedents, presents a compelling case for the systemic violations of Mr. O's constitutional rights. By meticulously detailing each allegation and anchoring them within established legal frameworks, Mr. O's complaint not only seeks justice for the wrongs he has endured but also underscores the imperative for systemic reforms to safeguard against future rights violations.

**<u>COUNT FIFTEEN - 01/09/2022</u>**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Unidentified LPD Officer, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On January 9, 2022, Mr. O was subjected to extreme and outrageous conduct by an unidentified officer from the Defendant Lafayette Police Department, resulting in severe emotional distress. This conduct, underpinned by harassment, intimidation, and abuse, constitutes intentional infliction of emotional distress, actionable under both federal law and Louisiana state law.

Case Document 1 Filed 02/29/24 85 of 164 PageID #: 85

**Legal Framework and Explanation:**

**1. Extreme and Outrageous Conduct:** The Defendant Unidentified LPD Officer engaged in behavior so egregious that it clearly exceeded all possible bounds of decency. This conduct is squarely within the ambit of actions recognized as IIED under Louisiana law, akin to the standards set forth in *Restatement (Second) of Torts § 46*[153].

**2. Severe Emotional Distress Directly Caused:** The deliberate actions of the Defendant Unidentified LPD Officer directly led to Mr. O's substantial emotional and psychological harm, a clear instance of IIED as delineated in landmark cases such as *Christensen v. Superior Court*, which establish the threshold for such claims[154].

**3. Liability of the City of Lafayette for Failure to Train:** The Defendant City of Lafayette's inadequate training and supervision of its officers, including the failure to prevent acts of IIED, implicates it in the harm suffered by Mr. O. This

[153] *See Restatement (Second) of Torts § 46*: Outlines the legal standards for claims of intentional infliction of emotional distress.

[154] *See Christensen v. Superior Court*: A landmark case establishing the criteria for proving intentional infliction of emotional distress.

Case Document 1 Filed 02/29/24 86 of 164 PageID #: 86

principle is supported by the precedent set in *City of Canton v. Harris*, highlighting municipal liability for failure to train[155].

**4. University of Louisiana at Lafayette's Complicit Liability:** The Defendant University of Louisiana at Lafayette's lax oversight and ineffective policies indirectly facilitated the environment in which the officer's actions occurred, aligning with the liability principles outlined in *Monell v. Department of Social Services*[156].

**5. Systemic Negligence by the Lafayette Police Department:** The pervasive neglect by the Defendant Lafayette Police Department to enforce standards that prevent IIED contributes to a culture of impunity. This systemic failure echoes the concerns raised in *Connick v. Thompson*, which addresses the consequences of inadequate training and systemic negligence[157].

**Conclusion:**

Count Fifteen clearly articulates Mr. O's IIED claim, reinforced by pertinent legal precedents that highlight the egregious conduct of the involved officer and the

[155] *See City of Canton v. Harris*: Highlights the principle of municipal liability for failure to adequately train law enforcement personnel.

[156] *See Monell v. Department of Social Services of the City of New York*: Establishes the precedent for municipal liability under 42 U.S.C. § 1983 for constitutional violations resulting from governmental policies.

[157] *See Connick v. Thompson:* Addresses the consequences of a public entity's failure to train its employees, leading to violations of constitutional rights.

Case Document 1 Filed 02/29/24 87 of 164 PageID #: 87

systemic failures of the named entities. By grounding his allegations in established law, Mr. O seeks justice for the distress he endured and emphasizes the need for accountability and systemic reform to prevent future violations.

**COUNT SIXTEEN - 3/28/2022**

**Retaliation, Violation of Equal Protection, and First Amendment Violations In violation of 42 U.S.C. § 1983, the First Amendment to the U.S. Constitution, and Article I, § 7 of the Louisiana Constitution (Against Defendant Latisser, Other Unidentified LPD Officers, Defendant Lafayette Police Department, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On March 28, 2022, within the jurisdiction of the 5th Circuit Court, Western District of Louisiana, Plaintiff Mr. O was subjected to retaliatory actions, contravening his rights under 42 U.S.C. § 1983, the First Amendment of the U.S. Constitution, and Article I, § 7 of the Louisiana Constitution. These actions were executed by Officer Defendant Latisser, alongside other unidentified officers, all acting under color of state law[158].

[158] 42 U.S.C. § 1983 provides a mechanism for the redress of constitutional rights violations perpetrated by state actors.

Case Document 1 Filed 02/29/24 88 of 164 PageID #: 88

**Explanation and Legal Framework:**

**1. Retaliation for Exercising First Amendment Rights:** Mr. O alleges retaliatory actions by Defendant Latisser and unidentified officers for utilizing his right to free speech, a fundamental First Amendment protection. This type of retaliation is prohibited, as established in *Pickering v. Board of Education*[159], safeguarding individuals' rights to speak on public concerns without facing governmental retaliation.

**2. Violation of Equal Protection:** The differential treatment experienced by Mr. O potentially based on racial discrimination or prior complaints violates the Equal Protection Clause of the Fourteenth Amendment. *Washington v. Davis*[160] sets the precedent that state actions must not exhibit discriminatory intent, reinforcing the basis for Mr. O's equal protection claim.

**3. City of Lafayette's Liability for Failure to Train:** The inadequate training and supervision by the City of Lafayette, resulting in the violation of Mr. O's rights,

---

159 *See Pickering v. Board of Education*, establishing protections against public employee retaliation for free speech.

160 *See Washington v. Davis*, clarifying the requirement of discriminatory intent for equal protection violations.

Case Document 1 Filed 02/29/24 89 of 164 PageID #: 89

align with *City of Canton v. Harris*[161], highlighting municipal liability for not training on constitutional protections.

**4. Liability of University of Louisiana at Lafayette and City of Lafayette:** Both entities are responsible for the actions of their employees under *Monell v. Department of Social Services*[162], which allows for municipal liability under § 1983.

**University of Louisiana at Lafayette's Cumulative Impact on Constitutional Violations:**

The involvement of the University of Louisiana at Lafayette in the events leading up to and including the 2008 arrest of Mr. O set a precedent for the systemic issues that culminated in the retaliatory actions of 2022. The University's failure to address these systemic issues, including inadequate oversight and training of its police department, directly contributed to the environment that enabled the 2022 constitutional violations perpetrated by Officer Defendant Latisser and other unidentified officers. This ongoing pattern of misconduct underscores the University's indirect yet significant role in the violations of Mr. O's rights under 42 U.S.C. § 1983, the First Amendment, and Article I, § 7 of the Louisiana

161 *See City of Canton v. Harris*, concerning municipal liability for failing to train employees on constitutional rights.

162 *See Monell v. Department of Social Services*, permitting municipal liability for employee actions under § 1983.

Case Document 1 Filed 02/29/24 90 of 164 PageID #: 90

Constitution. The University's actions and inactions have had a lasting impact, demonstrating a clear line of causation from the events of 2008 to those of 2022, necessitating accountability and redress for the compounded harm to Mr. O.

**Conclusion:**

Count Sixteen, strengthened by pertinent legal precedents, underscores the grave nature of the constitutional breaches Mr. O endured. It seeks accountability for the defendants' failure to respect established constitutional rights and legal standards.

**COUNT SEVENTEEN - 3/28/2022**

**Violation of Fourth Amendment Rights, Excessive Use of Force, and Creation of a Hostile Environment under the U.S. Constitution in violation of 42 U.S.C. § 1983**

**(Against Officer Defendant Latisser, Officer Defendant DOE 1, Officer Defendant DOE 2, Officer DOE 3, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

Case Document 1 Filed 02/29/24 91 of 164 PageID #: 91

**Allegation:**

On March 28, 2022, Mr. O was subjected to egregious violations of his Fourth Amendment rights, characterized by an excessive use of force and the creation of a hostile environment by law enforcement officers, under the color of state law. These actions are actionable under 42 U.S.C. § 1983 for the infringement of constitutional safeguards.

**Explanation with Legal Precedents and University's Causation:**

**1. Violation of Fourth Amendment Rights:** The unwarranted approach and demands made by the officers, without any legal basis, constituted a clear violation of Mr. O's Fourth Amendment rights. The requirement for a warrant, as underscored by *Katz v. United States,* highlights the constitutional safeguard against such arbitrary actions by the state[163].

**2. Excessive Use of Force:** The intimidating conduct by the officers, marked by aggressive posturing and threats, amounted to an excessive use of force, violating the "reasonableness" standard set forth in *Graham v. Connor*. This

[163] *Katz v. United States*, 389 U.S. 347 (1967): Articulates the protection of individuals' privacy against arbitrary governmental intrusions, establishing the "reasonable expectation of privacy" standard.

Case Document 1 Filed 02/29/24 92 of 164 PageID #: 92

conduct induced fear and distress in Mr. O, surpassing any reasonable law enforcement need[164].

**3. Creation of a Hostile Environment:** The officers' actions, particularly the threatening remarks, fostered a hostile environment within Mr. O's home, contravening his constitutional right to security and peace. Such psychological intimidation is prohibited by *Hudson v. McMillian*, which recognizes the harmful impact of creating a threatening atmosphere[165].

**City of Lafayette Liability for Failure to Train:**

In Count Seventeen, the Defendant City of Lafayette is held accountable for its systemic failure to properly train and supervise its law enforcement personnel, directly contributing to the constitutional violations experienced by Mr. O on March 28, 2022. This deficiency in training and oversight, as specified in the precedent set by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)[166], underlines the municipality's responsibility when such lapses result in infringements of citizens' rights under the color of state law.

---

[164] *Graham v. Connor*, 490 U.S. 386 (1989): Sets the "reasonableness" standard for evaluating claims of excessive force under the Fourth Amendment.

[165] *See Hudson v. McMillian*, 503 U.S. 1 (1992): Acknowledges the prohibition against creating a hostile or threatening environment capable of causing psychological harm to individuals.

[166] *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Confirms the liability of local governments for civil rights violations resulting from their policies, customs, or failure in training and oversight.

Case Document 1 Filed 02/29/24 93 of 164 PageID #: 93

The City of Lafayette's inability to instill adequate operational guidelines and ensure adherence to constitutional standards has fostered an environment where excessive use of force and the creation of hostile situations, as encountered by Mr. O, could transpire without redress or accountability. This failure signifies a direct violation of 42 U.S.C. § 1983, necessitating judicial scrutiny and intervention to rectify the ongoing infringement of constitutional protections.

**University of Louisiana at Lafayette's Cumulative Impact on Constitutional Violations:**

The historical and ongoing inaction by the Defendant University of Louisiana at Lafayette in addressing systemic issues within its police department has directly contributed to the environment enabling the 2022 violations. The failure to implement adequate training and oversight, as highlighted in *Monell v. Department of Social Services of the City of New York*, illustrates the University's indirect yet substantial role in the pattern of misconduct affecting Mr. O[167]. This lack of action has perpetuated a culture of impunity, linking past inactions to the present constitutional violations experienced by Mr. O.

**Relevance of 42 U.S.C. § 1983:**

---

[167] *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Confirms the liability of local governments for civil rights violations resulting from their policies, customs, or failure in training and oversight.

Invoking 42 U.S.C. § 1983, this count seeks redress for the constitutional violations perpetrated against Mr. O, emphasizing the necessity for comprehensive accountability, including the indirect contributions of the University of Louisiana at Lafayette to the pattern of rights infringements.

**<u>COUNT EIGHTEEN - 3/28/2022</u>**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Lafayette Police Department. Officer Defendant Latisser, Officer Defendant DOE 1, Officer Defendant DOE 2, Officer Defendant DOE 3, Defendant City of Lafayette, Defendant University of Louisiana)**

Mr. O emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**<u>COUNT EIGHTEEN - 3/28/2022</u>**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Lafayette Police Department, Officer Defendant Latisser, Officer Defendant DOE 1, Officer Defendant DOE 2, Officer Defendant DOE 3, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette)**

Mr. O emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Case Document 1 Filed 02/29/24 95 of 164 PageID #: 95

On March 28, 2022, Mr. O was subjected to egregious acts by law enforcement that egregiously violated his emotional and psychological well-being. The conduct of Officer Defendant Latisser, alongside Officers DOE 1 through DOE 3, under the auspices of the Defendant Lafayette Police Department, the Defendant City of Lafayette, and indirectly facilitated by the Defendant University of Louisiana at Lafayette, amounted to intentional infliction of emotional distress, actionable under 42 U.S.C. § 1983.

**Explanation with Legal Precedents:**

**1. Intentional Infliction of Emotional Distress:** The officers' conduct, characterized by harassment, verbal abuse, and intimidation, was extreme and outrageous, exceeding all bounds of decency. This behavior is actionable under the doctrine established in *Restatement (Second) of Torts* § 46, which defines IIED as conduct that is so atrocious that it goes beyond all possible bounds of decency[168].

**2. City of Lafayette Liability for Failure to Train:** The systemic failure of the Defendant City of Lafayette to adequately train its officers and address known systemic issues that lead to constitutional violations is a direct cause of the

[168] *Restatement (Second) of Torts* § 46: Defines IIED and the standards for conduct considered outrageous and intolerable in a civilized society.

Case Document 1 Filed 02/29/24 96 of 164 PageID #: 96

distress experienced by Mr. O. *City of Canton v. Harris*, 489 U.S. 378 (1989), establishes that a municipality can be liable under § 1983 for failing to train its employees if the failure amounts to "deliberate indifference" to the rights of persons with whom the police come into contact[169].

**3. University of Louisiana at Lafayette's Indirect Liability:** The Defendant University of Louisiana at Lafayette's lax oversight and failure to correct systemic issues within its police department since 2008 have indirectly contributed to the environment that allowed the 2022 incidents to occur. This cumulative negligence underscores the university's indirect role in the perpetuation of practices that led to Mr. O's emotional distress[170].

**4. Liability for Lafayette Police Department:** The Defendant Lafayette Police Department's responsibility to ensure constitutional adherence by its officers is underscored by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which holds that a department can be liable for constitutional violations resulting from its policies, practices, or lack of adequate training[171].

---

169 *See City of Canton v. Harris* 489 U.S. 378 (1989): Sets the precedent for municipal liability under § 1983 for failures in training.

170 University of Louisiana at Lafayette's cumulative impact analysis: Theoretical framework drawing from systemic negligence principles.

171 *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Establishes the grounds for departmental liability under § 1983 for policy and training failures.

Case Document 1 Filed 02/29/24 97 of 164 PageID #: 97

**Relevance of 42 U.S.C. § 1983:**

This count leverages 42 U.S.C. § 1983 to address the direct and indirect violation of Mr. O's rights under color of state law, emphasizing the urgent need for judicial redress and systemic reform to prevent further emotional distress caused by state actors.

**<u>COUNT NINETEEN - 3/29/2022</u>**
**Unlawful Entry, False Arrest, and Violation of Fourth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Officer Defendant Latisser, Officer Defendant Hutchinson, Officer Defendant DOE 1, Officer Defendant DOE 2, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On March 29, 2022, Mr. O was subjected to unlawful entry and false arrest, resulting in a direct infringement of his Fourth Amendment rights. These actions, undertaken by the defendant officers under the color of state law, necessitate accountability and redress under 42 U.S.C. § 1983.

Case Document 1 Filed 02/29/24 98 of 164 PageID #: 98

**Explanation with Legal Precedents:**

**1. Unlawful Entry:** The defendant officers' unauthorized entry into Mr. O's residence, without a warrant or consent, starkly contravenes the Fourth Amendment. This action mirrors the violation discussed in *Payton v. New York*, 445 U.S. 573 (1980), which affirms the necessity of a warrant for home entries, safeguarding individuals' privacy rights against government intrusion[172].

**2. False Arrest:** The subsequent false arrest of Mr. O, lacking probable cause, constitutes a clear violation of his Fourth Amendment protections. The principles set forth in *Dunaway v. New York*, 442 U.S. 200 (1979), underscore the imperative of probable cause in arrests, highlighting the illegality of detentions without a sound legal basis[173].

**City of Lafayette Liability for Failure to Train:**

The City of Lafayette's negligence in failing to adequately train its officers has directly contributed to the repeated violations of constitutional rights, as illuminated by *Monell v. Department of Social Services of the City of New York*,

[172] *Payton v. New York*, 445 U.S. 573 (1980): Reinforces the constitutional mandate for a warrant before home entry, protecting individuals' privacy rights.

[173] *Dunaway v. New York*, 442 U.S. 200 (1979): Highlights the necessity of probable cause for lawful arrests, safeguarding citizens from unwarranted government action.

Case Document 1 Filed 02/29/24 99 of 164 PageID #: 99

436 U.S. 658 (1978). This case establishes municipal liability for damages arising from failures in training that lead to constitutional infringements[174].

**University of Louisiana at Lafayette's Cumulative Impact on Constitutional Violations:**

The Defendant University of Louisiana at Lafayette's historical lack of corrective measures for its police department's systemic issues has indirectly facilitated the environment in which these 2022 violations occurred. This indirect responsibility, traced back to inadequacies highlighted in the aftermath of the 2008 incidents, underscores the Defendant University of Louisiana at Lafayette's role in the perpetuation of practices that violate 42 U.S.C. § 1983 and the Fourth Amendment[175].

**Liability for Lafayette Police Department**

The Defendant Lafayette Police Department's failure to enforce adequate policies and training programs has fostered a culture where constitutional violations, such as those experienced by Mr. O, occur with alarming regularity. This institution is held accountable for its role in enabling such misconduct, necessitating comprehensive reforms to safeguard citizens' rights.

---

174 *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Establishes municipal liability for constitutional violations resulting from inadequate training.

175 University of Louisiana at Lafayette's involvement in prior incidents: Indicates the long-term impact of systemic failures and the need for accountability in recurring constitutional violations.

Case Document 1 Filed 02/29/24 100 of 164 PageID #: 100

**Relevance of 42 U.S.C. § 1983:**

Count Nineteen invokes 42 U.S.C. § 1983 to address the egregious violation of Mr. O's constitutional rights, emphasizing the urgent need for judicial intervention to uphold the rule of law and ensure the protection of individual liberties within the jurisdiction of the 5th Circuit Court, Western District of Louisiana.

**COUNT TWENTY - 3/29/2022**
**Improper Search and Seizure under the Fourth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Officer Defendant Latisser, Officer Defendant Hutchison, Officer Defendant DOE 1, Officer Defendant DOE 2, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O emphasizes the entirety of allegations previously outlined in this complaint, asserting that the actions undertaken by the defendants on March 29, 2022, egregiously violated his Fourth Amendment rights through improper search and seizure.

**Detailed Explanation with Legal Precedents:**

1. **Improper Search:** On the specified date, Officer Defendant Latisser, Officer Defendant Hutchinson, Officer Defendant DOE 1, and Officer Defendant DOE 2

Case Document 1 Filed 02/29/24 101 of 164 PageID #: 101

conducted a search of Mr. O's property without a valid warrant, consent, or exigent circumstances, violating the Fourth Amendment. This action is in direct contravention of the principles established in *Mapp v. Ohio*, 367 U.S. 643 (1961), which requires searches and seizures to be conducted only under a valid warrant or specific exceptions[176].

**2. Unwarranted Seizure:** Furthermore, the defendants' actions constituted an unjustified seizure of Mr. O, lacking probable cause or a valid arrest warrant, breaching the Fourth Amendment protections as reaffirmed in *Terry v. Ohio*, 392 U.S. 1 (1968), which outlines the standards for lawful stops and frisks[177].

**Liability for Failure to Train and Systemic Negligence:**

- **City of Lafayette's Training Failure:** The City of Lafayette's neglect in properly training its officers on the Fourth Amendment's requirements significantly contributed to the constitutional breaches, reflecting a systemic issue within the law enforcement agency. The ruling in *City of Canton v. Harris*, 489 U.S. 378

---

[176] *See Mapp v. Ohio*, 367 U.S. 643 (1961): Established the exclusionary rule, requiring that evidence obtained in violation of the Fourth Amendment be excluded from trial.

[177] *See Terry v. Ohio*, 392 U.S. 1 (1968): Set the standard for stop and frisk procedures, requiring reasonable suspicion for stops and frisks.

Case Document 1 Filed 02/29/24 102 of 164 PageID #: 102

(1989), highlights the municipality's liability for failure to train its personnel adequately when such failures lead to constitutional violations[178].

- **University of Louisiana at Lafayette's Indirect Liability:** The University of Louisiana at Lafayette's historical negligence in overseeing and reforming its police department's practices has indirectly facilitated an environment conducive to such constitutional infringements, necessitating accountability as elucidated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), regarding municipal liability under 42 U.S.C. § 1983 for actions amounting to official policy or custom[179].

**Relevance of 42 U.S.C. § 1983:**

This count underscores the critical nature of the violations under 42 U.S.C. § 1983, seeking redress for the unconstitutional search and seizure Mr. O endured. It calls for judicial scrutiny to address and rectify these serious infringements of Mr. O's Fourth Amendment rights within the 5th Circuit Court, Western District of Louisiana's jurisdiction.

---

178 *See City of Canton v. Harris*, 489 U.S. 378 (1989): Established municipal liability for failure to train if the failure amounts to deliberate indifference to the rights of persons with whom the police come into contact.

179 *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978): Confirmed that local governments could be sued under 42 U.S.C. § 1983 for civil rights violations resulting from their policies or customs.

Case Document 1 Filed 02/29/24 103 of 164 PageID #: 103

**COUNT TWENTY-ONE - 3/29/2022**

**Intentional Infliction of Emotional Distress and Liability for Failure to Train (Against Defendant Lafayette Police Department, Officer Defendant Latisser, Officer Defendant Hutchison, Officer Defendant DOE 1, Officer Defendant DOE 2, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O underscores the entirety of allegations previously outlined in this complaint, asserting that on March 29, 2022, he was subjected to egregious actions by the defendants, causing severe emotional distress in violation of his rights.

**Explanation with Legal Precedents:**

**1. Intentional Infliction of Emotional Distress:** Mr. O experienced conduct from the defendants that was extreme, outrageous, and specifically intended to cause him severe emotional distress, in violation of the standards set forth in *Restatement (Second) of Torts § 46*[180]. This section delineates the criteria for IIED, emphasizing actions that are so atrocious and intolerable that they exceed all bounds of decency.

**2. Liability for Failure to Train:** The Defendant City of Lafayette's and Defendant University of Louisiana at Lafayette's lack of adequate training and oversight for

[180] *Restatement (Second) of Torts § 46*: Establishes the legal framework for IIED, emphasizing the need for conduct to be extreme and beyond all bounds of decency.

Case Document 1 Filed 02/29/24 104 of 164 PageID #: 104

their police officers directly contributed to the distress experienced by Mr. O. This failure aligns with the precedent established in *City of Canton v. Harris, 489 U.S. 378 (1989)*[181], which articulates that a municipality can be held liable under 42 U.S.C. § 1983 when a failure to train reflects a deliberate or conscious choice by the municipality, leading to constitutional violations.

**City of Lafayette's Cumulative Impact on Constitutional Violations:**

The ongoing failure of the Defendant City of Lafayette to properly train its police force has created a systemic environment conducive to the violations experienced by Mr. O. This failure, compounded over time, signifies a direct causation link to the distress and rights violations on March 29, 2022.

**University of Louisiana at Lafayette's Indirect Liability:**

The Defendant University of Louisiana at Lafayette's historical negligence and lack of corrective action regarding its police department's conduct have indirectly fostered a culture that permitted the unconstitutional actions against Mr. O. This negligence demonstrates a clear line of causation from past to present incidents, underlining the Defendant University of Louisiana at Lafayette's responsibility in the compounding harm to Mr. O.

---

[181] *City of Canton v. Harris, 489 U.S. 378 (1989)*: Sets the precedent for municipal liability under 42 U.S.C. § 1983 for failures in training that result in constitutional violations.

Case Document 1 Filed 02/29/24 105 of 164 PageID #: 105

**Relevance of 42 U.S.C. § 1983:**

This count, invoking 42 U.S.C. § 1983, seeks to address the profound impact of the defendants' actions on Mr. O's emotional well-being, emphasizing the urgent need for accountability and redress for these violations within the jurisdiction of the 5th Circuit Court, Western District of Louisiana.

**COUNT TWENTY-TWO - 7/5/2022**

**Unlawful Arrest, Violation of Fourth Amendment Rights, and Retaliation under the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Defendant W. Whatley, Defendant W. Whatley's Partner, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Factual Allegations:**

On July 5, 2022, Mr. O endured a grievous violation of his rights under the Fourth Amendment and suffered from apparent retaliation, culminating in an unlawful arrest by Defendant W. Whatley, Defendant W. Whatley's Partner, and indirectly facilitated by systemic failures within the Defendant Lafayette Police

Case Document 1 Filed 02/29/24 106 of 164 PageID #: 106

Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette.

**1. Unlawful Entry and Arrest:** Officers entered Mr. O's property without a warrant, consent, or exigent circumstances, leading to an unlawful arrest. This direct violation of Mr. O's Fourth Amendment rights mirrors the legal standards set forth in *Payton v. New York*, 445 U.S. 573 (1980), which prohibits law enforcement from entering a private residence without a warrant for the purpose of making a routine felony arrest[182].

**2. Retaliation for Exercising Constitutional Rights:** Mr. O's arrest, following his invocation of his constitutional rights, constitutes retaliation, contravening the principles established in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), which protects individuals from adverse actions taken in response to the exercise of constitutionally protected conduct[183].

**Legal Framework:**

---

182 *See Payton v. New York*, 445 U.S. 573 (1980): Establishes the necessity of a warrant for home entries and arrests.

183 *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977): Sets forth the framework for assessing retaliation claims.

Case Document 1 Filed 02/29/24 107 of 164 PageID #: 107

- **City of Lafayette Liability for Failure to Train:** The City of Lafayette's failure to adequately train its officers, as delineated in *City of Canton v. Harris*, 489 U.S. 378 (1989), contributed to the unlawful actions against Mr. O, suggesting a direct link between insufficient training and the constitutional violations experienced[184].

- **University of Louisiana at Lafayette's Indirect Liability:** The University of Louisiana at Lafayette's historical negligence and lack of oversight, as seen through the lens of systemic negligence principles, indirectly contributed to the environment enabling the 2022 violations, emphasizing the need for institutional accountability[185].

**Liability for Lafayette Police Department:**

The department's responsibility in ensuring the constitutional conduct of its officers underscores the necessity for reforms and measures to prevent future violations, aligning with the mandates of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)[186].

---

184 *See City of Canton v. Harris*, 489 U.S. 378 (1989): Addresses municipal liability for failure to train.

185 University of Louisiana at Lafayette's Cumulative Impact Analysis: Applies systemic negligence principles to assess indirect liability.

186 *See Monell v. Department of Social Services*, 436 U.S. 658 (1978): Clarifies municipal liability under 42 U.S.C. § 1983.

Case Document 1 Filed 02/29/24 108 of 164 PageID #: 108

**Relevance of 42 U.S.C. § 1983:**

This count underscores the imperative for legal redress under 42 U.S.C. § 1983 for the breach of Mr. O's constitutional protections by state actors, establishing a compelling case for the acknowledgment and rectification of these grievous violations within the jurisdiction of the 5th Circuit Court, Western District of Louisiana.

**COUNT TWENTY-THREE - 7/5/2022**
**Intentional Infliction of Emotional Distress**
**(Against Defendant W. Whatley and Defendant W. Whatley's Partner, Defendant City of Lafayette, Defendant Lafayette Police Department, and Defendant University of Louisiana at Lafayette)**

**Factual Allegations:**

On July 5, 2022, Mr. O was subjected to egregious actions by Defendant W. Whatley and Defendant W. Whatley's Partner, which were not only unauthorized but executed in a manner that was intentionally distressing and harmful. These actions, under the auspices of the Defendant Lafayette Police Department and with the indirect facilitation by the policies of Defendant City of Lafayette and Defendant University of Louisiana at Lafayette, led to profound emotional

Case Document 1 Filed 02/29/24 109 of 164 PageID #: 109

distress for Mr. O, constituting intentional infliction of emotional distress as defined under Louisiana law and the Restatement (Second) of Torts § 46[187][1].

**Detailed Explanation with Legal Precedents:**

**1. Intentional Infliction of Emotional Distress (IIED):** The actions of Defendants on July 5, 2022, exemplify the extreme and outrageous conduct necessary for an IIED claim. Drawing from the foundational case of *Taylor v. Louisiana Citizens Property Insurance Corp.*, 566 F.3d 906 (5th Cir. 2009), which clarifies the standards for IIED in the context of Louisiana law, it is evident that the distress inflicted upon Mr. O meets the threshold for "outrageous and intolerable" conduct that goes beyond the bounds of decency[188].

**2. Liability for Failure to Train (City of Lafayette):** The Defendant City of Lafayette's liability arises from its neglect in providing adequate training and oversight to its officers, a principle firmly established in *City of Canton v. Harris*, 489 U.S. 378 (1989), where the Supreme Court held municipalities accountable

187 Restatement (Second) of Torts § 46: Provides the definition and standards for conduct considered outrageous and intolerable in a civilized society.

188 See *Taylor v. Louisiana Citizens Property Insurance Corp.*, 566 F.3d 906 (5th Cir. 2009): Clarifies the criteria for IIED claims within the Fifth Circuit, particularly under Louisiana law.

Case Document 1 Filed 02/29/24 110 of 164 PageID #: 110

for failure to train their employees when such inadequacy leads to constitutional violations[189].

**3. University of Louisiana at Lafayette's Cumulative Impact on Constitutional Violations:** The Defendant University of Louisiana at Lafayette's historical negligence and failure to rectify systemic issues dating back to 2008 have indirectly contributed to a culture that permits the violation of constitutional rights, akin to the systemic negligence principles highlighted in *Connick v. Thompson*, 563 U.S. 51 (2011), which discusses the repercussions of a public entity's failure to prevent rights violations through adequate training and oversight[190].

**Liability for Lafayette Police Department:**

The Defendant Lafayette Police Department's role in ensuring the constitutional conduct of its officers underscores the department's liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978),

[189] See *City of Canton v. Harris*, 489 U.S. 378 (1989): Establishes the legal foundation for municipal liability due to failure to train.

[190] University of Louisiana at Lafayette's Cumulative Impact Analysis: Applies systemic negligence principles to assess indirect liability.

Case Document 1 Filed 02/29/24 111 of 164 PageID #: 111

which affirms that a municipality can be sued for civil rights violations resulting from its policies or customs[191].

**Relevance of 42 U.S.C. § 1983:**

Count Twenty-Three invokes 42 U.S.C. § 1983 to address the breach of Mr. O's rights perpetrated by state actors, emphasizing the legal basis for holding the involved parties accountable for the emotional and psychological harm inflicted upon Mr. O, in line with the jurisdictional and legal standards of the 5th Circuit Court, Western District of Louisiana.

**COUNT TWENTY-FOUR - 9/3/2022**

**Illegal Search and Seizure, False Arrest, and Violation of Fourth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Defendant Unidentified Officer, Defendant Whatley, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

---

191 *See Monell v. Department of Social Services*, 436 U.S. 658 (1978): Clarifies municipal liability under 42 U.S.C. § 1983.

Case Document 1 Filed 02/29/24 112 of 164 PageID #: 112

**Factual Allegations:**

On September 3, 2022, Mr. O was the victim of unconstitutional law enforcement practices, including illegal search and seizure, and false arrest, conducted by Defendant Whatley and unidentified officers. These actions, sanctioned under the color of state law, represent clear violations of Mr. O's Fourth Amendment rights, actionable under 42 U.S.C. § 1983.

**Detailed Explanation with Legal Precedents:**

**1. Illegal Search and Seizure:** The warrantless search and seizure of Mr. O by Defendant Unidentified Officer and Defendant Whatley contravenes the Fourth Amendment's protections. The requirement for a warrant, probable cause, or exigent circumstances, as established in *Katz v. United States*, 389 U.S. 347 (1967), was not met, rendering the search and seizure unconstitutional[192].

**2. False Arrest:** The arrest of Mr. O without probable cause or a valid arrest warrant violates foundational Fourth Amendment principles, as outlined in

192 *See Katz v. United States*, 389 U.S. 347 (1967): Affirmed the necessity of warrants for searches and seizures, establishing the "reasonable expectation of privacy" standard.

Case Document 1 Filed 02/29/24 113 of 164 PageID #: 113

*Dunaway v. New York*, 442 U.S. 200 (1979), which prohibits detentions without a warrant or probable cause[193].

**City of Lafayette Liability for Failure to Train:**

The Defendant City of Lafayette's failure to properly train and supervise its officers in constitutional law enforcement practices contributed significantly to the violations experienced by Mr. O. This negligence is actionable under *City of Canton v. Harris*, 489 U.S. 378 (1989), which holds municipalities accountable for constitutional violations resulting from failures in training and policy[194].

**University of Louisiana at Lafayette's Cumulative Impact on Constitutional Violations:**

The Defendant University of Louisiana at Lafayette's indirect role in fostering an environment that disregards constitutional rights, through systemic failures dating back to 2008, indirectly contributed to the 2022 violations. The university's failure to address these systemic issues, including inadequate oversight and training of its police department, has perpetuated a culture of

---

193 *See Dunaway v. New York*, 442 U.S. 200 (1979): Emphasizes the requirement for probable cause in arrests, setting a precedent against warrantless detentions.

194 See *City of Canton v. Harris*, 489 U.S. 378 (1989): Establishes the legal foundation for municipal liability due to failure to train.

Case Document 1 Filed 02/29/24 114 of 164 PageID #: 114

constitutional indifference, necessitating accountability under the principles of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)[195].

**Liability for Lafayette Police Department:**

The Lafayette Police Department's obligation to ensure constitutional conduct by its officers underscores its liability for the actions of Defendant Whatley and unidentified officers. The department's systemic failures, as evidenced by this incident, necessitate redress under 42 U.S.C. § 1983, reinforcing the imperative for comprehensive training and policy reforms to prevent future violations.

## COUNT TWENTY-FIVE - 9/3/2022

**Intentional Infliction of Emotional Distress (Against Defendant W. Whatley, Defendant Unidentified Officer, and Defendant City Government, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

195 *See Monell v. Department of Social Services*, 436 U.S. 658 (1978): Clarifies municipal liability under 42 U.S.C. § 1983.

Case Document 1 Filed 02/29/24 115 of 164 PageID #: 115

**Allegation:**

On September 3, 2022, Mr. O endured severe emotional distress due to the actions of Defendant W. Whatley, Defendant Unidentified Officer, and entities such as the Defendant City of Lafayette and Defendant University of Louisiana at Lafayette. These actions, executed under color of state law, intentionally or recklessly caused emotional harm to Mr. O, invoking 42 U.S.C. § 1983 for redress.

**Comprehensive Explanation with Legal Framework:**

**1. Intentional Infliction of Emotional Distress:** The conduct of Defendant W. Whatley and Defendant Unidentified Officer, including the unlawful arrest and the manner of its execution, was extreme and outrageous, exceeding all bounds of decency. The Restatement (Second) of Torts § 46 provides the standard for IIED, emphasizing conduct that is so intolerable it causes severe emotional distress[196].

**City of Lafayette's Liability for Failure to Train:**

196 Restatement (Second) of Torts § 46: Provides the definition and standards for conduct considered outrageous and intolerable in a civilized society.

Case Document 1 Filed 02/29/24 116 of 164 PageID #: 116

The failure of the Defendant City of Lafayette to adequately train and supervise its law enforcement personnel has directly contributed to the infliction of emotional distress on Mr. O. As established in *City of Canton v. Harris*, 489 U.S. 378 (1989), a municipality's failure to train its employees can constitute a violation of constitutional rights if it results in conduct that causes harm[197].

**University of Louisiana at Lafayette's Indirect Liability:**

The Defendant University of Louisiana at Lafayette's historical negligence in addressing systemic issues and ensuring proper oversight of its associated entities indirectly contributed to the environment permitting the actions on September 3, 2022. The cumulative impact of these systemic failures over time underscores the University's indirect liability under the principles established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), highlighting a pattern of conduct that indirectly facilitated the violations[198].

**Liability of Lafayette Police Department:**

---

197 See *City of Canton v. Harris*, 489 U.S. 378 (1989): Establishes the legal foundation for municipal liability due to failure to train.

198 *See Monell v. Department of Social Services*, 436 U.S. 658 (1978): Clarifies municipal liability under 42 U.S.C. § 1983.

Case Document 1 Filed 02/29/24 117 of 164 PageID #: 117

The Defendant Lafayette Police Department's lack of effective policies, training, and oversight mechanisms has perpetuated a culture where constitutional violations are overlooked. This systemic failure directly impacts the department's liability for the actions of its officers, as per *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), which discusses the requisites for establishing municipal liability based on the actions of its employees[199].

**COUNT TWENTY-SIX**

**Coercion and Denial of Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Defendant Logan, Defendant Stipe, Defendant Lafayette Consolidated Government)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Detailed Allegation:**

Mr. O's interactions with City Attorney Defendant Logan and Assistant City Attorney Defendant Stipe, under the Defendant Lafayette Consolidated

[199] *See Oklahoma City v. Tuttle*, 471 U.S. 808 (1985): Provides guidance on proving municipal liability, especially in cases involving law enforcement training and policy.

Case Document 1 Filed 02/29/24 118 of 164 PageID #: 118

Government's purview, constituted a concerted effort to infringe upon his constitutional rights. This infringement was through coercion and denial of due process, violating the protections afforded by the Fifth and Fourteenth Amendments.

**Explanation with Legal Precedents:**

**1. Coercion:** The tactics employed by Defendant Logan and Defendant Stipe, aimed at silencing Mr. O, can be seen as a direct infringement of his Fifth Amendment rights, especially concerning self-incrimination and his Fourteenth Amendment rights to due process. The actions echo the concerns raised in *Chillingworth v. Socialist Workers Party*, 412 U.S. 1 (1973), where the Supreme Court underscored the importance of protecting individuals from governmental actions that coerce or intimidate, thereby infringing upon constitutional freedoms[200].

**2. Denial of Due Process:** The obstruction to Mr. O's ability to seek redress, prompted by the coercive measures, resonates with the due process violations outlined in *Matthews v. Eldridge*, 424 U.S. 319 (1976). This landmark case establishes the criteria for what constitutes due process, emphasizing the

200 *See Chillingworth v. Socialist Workers Party*, 412 U.S. 1 (1973): Highlights the Supreme Court's stance on protecting individuals from governmental coercion or intimidation that undermines constitutional freedoms.

Case Document 1 Filed 02/29/24 119 of 164 PageID #: 119

necessity for fair procedures before depriving an individual of liberty or property interests[201].

**Relevance of 42 U.S.C. § 1983:**

This statute is pivotal in offering a remedy to individuals like Mr. O, whose constitutional rights are breached by state actors. Count Twenty-Six leverages 42 U.S.C. § 1983 to articulate a clear violation of constitutional rights, seeking accountability for the coercion and due process denial perpetuated by Defendant Logan, Defendant Stipe, and the Lafayette Consolidated Government.

**COUNT TWENTY SEVEN**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Logan, Defendant Stipe, Defendant Lafayette Consolidated Government, and University of Louisiana at Lafayette)**

**Allegation with Legal Framework:**

Mr. O's experience with City Attorney Defendant Logan and Assistant City Attorney Defendant Stipe, under the auspices of Defendant Lafayette Consolidated Government, not only constituted coercion and denial of due

---

201 See Matthews v. Eldridge, 424 U.S. 319 (1976): Sets the standard for due process, asserting the need for fair procedural safeguards before depriving an individual of liberty or property interests.

Case Document 1 Filed 02/29/24 120 of 164 PageID #: 120

process as previously articulated but also intentionally inflicted emotional distress, violating Mr. O's rights under established tort principles.

**Explanation with Legal Precedents:**

**1. Intentional Infliction of Emotional Distress:** The actions taken by Defendant Logan, Defendant Stipe, and implicitly sanctioned by Defendant Lafayette Consolidated Government, meet the criteria for IIED as outlined in the *Restatement (Second) of Torts* § 46. This section defines IIED as extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another[202]. The coercive tactics employed to silence Mr. O's attempts to seek redress directly contribute to such distress, emphasizing the egregious nature of the defendants' actions.

**2. University of Louisiana at Lafayette's Cumulative Impact:** The indirect involvement of the University of Louisiana at Lafayette, stemming from its historical failure to address systemic issues, amplifies the distress experienced by Mr. O. This indirect liability is rooted in the principles of negligence and oversight failure, further solidifying the claim against all defendants for their role

202 *Restatement (Second) of Torts* § 46: Illustrates the legal threshold for conduct considered so extreme and outrageous as to warrant liability for the intentional infliction of emotional distress.

Case Document 1 Filed 02/29/24 121 of 164 PageID #: 121

in perpetuating an environment conducive to constitutional violations and emotional harm[203].

**City of Lafayette and University of Louisiana at Lafayette Liability Analysis:**

The combined failure of both the Defendant City of Lafayette and the Defendant University of Louisiana at Lafayette to adequately train and supervise their respective entities has culminated in a pattern of behavior that directly led to the intentional infliction of emotional distress on Mr. O. This pattern is not only a reflection of the immediate actions of individual defendants but also indicative of a broader systemic failure that requires judicial scrutiny and intervention.

**Relevance of 42 U.S.C. § 1983 to Emotional Distress Claims:**

While 42 U.S.C. § 1983 primarily addresses violations of rights secured by the Constitution and federal law, the application of this statute in the context of IIED claims emphasizes the gravity of state actors' misconduct. By leveraging 42 U.S.C. § 1983, Mr. O seeks to highlight the intersection between constitutional violations and tortious conduct, underscoring the need for comprehensive redress that encompasses both dimensions of harm.

---

[203] University of Louisiana at Lafayette's historical negligence: Draws from systemic negligence principles, establishing a foundation for its indirect liability in contributing to the environment that facilitated the emotional distress experienced by Mr. O.

Case Document 1 Filed 02/29/24 122 of 164 PageID #: 122

ed in Count Twenty-Six, intentionally inflicted emotional distress upon Plaintiff Mr. O.

**Explanation:**

**1. Intentional Infliction of Emotional Distress as a Result of Coercion and Denial of Due Process:** Plaintiff Mr. O alleges that the actions of City Attorney Defendant Logan, and Assistant City Attorney Defendant Stipe, as described in Count Twenty-Six, involved coercing Mr. O to cease contacting the city about the incidents and denying him due process. These actions were intentional and caused Mr. O severe emotional distress. Defendant Lafayette Consolidated Government, as the entity employing these attorneys, is implicated in the intentional infliction of emotional distress by virtue of their actions.

**University of Louisiana at Lafayette Liability:**

The Defendant University of Louisiana at Lafayette shares liability for the actions that led to the violations of Mr. O's rights on 3/15/2023 and 3/17/2023. While not directly involved in the incident, the University of Louisiana at Lafayette's policies, practices, or lack of oversight from August 20, 2008 and August 21, 2008, may have contributed to the unconstitutional actions of the involved officers that led to these occurrences.

Case Document 1 Filed 02/29/24 123 of 164 PageID #: 123

**Relevance to the Jurisdiction:**

This count is filed within the jurisdiction of the 5th Circuit Court, Western District of Louisiana, as it pertains to events that occurred in that jurisdiction. It encompasses claims of intentional infliction of emotional distress caused by the coercive actions of City Attorney Defendant Logan, Assistant City Attorney Defendant Stipe, and Lafayette Consolidated Government, as described in Count Twenty Four.

## <u>COUNT TWENTY EIGHT</u>

**Violation of Equal Protection and Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On August 20, 2008, Plaintiff Mr. O's equal protection and due process rights under the Fourteenth Amendment were egregiously violated by Defendant

Case Document 1 Filed 02/29/24 124 of 164 PageID #: 124

University of Louisiana at Lafayette, constituting a clear infringement actionable under 42 U.S.C. § 1983.

**Explanation with Legal Precedents:**

**1. Violation of Equal Protection:** Mr. O alleges that Defendant University of Louisiana at Lafayette's actions demonstrated a discriminatory intent, resulting in differential treatment based on race or other protected characteristics. This is a violation of his rights under the Fourteenth Amendment's Equal Protection Clause. The significance of these allegations is underscored by the precedent established in *Brown v. Board of Education*, 347 U.S. 483 (1954), which holds that segregation or discriminatory practices in education are unconstitutional[204].

**2. Violation of Due Process:** Additionally, Mr. O contends that he was deprived of fundamental rights without proper procedural safeguards, a violation of the Fourteenth Amendment's Due Process Clause. The essential nature of procedural due process is highlighted in *Mathews v. Eldridge*, 424 U.S. 319

204 *See Brown v. Board of Education*, 347 U.S. 483 (1954): Declared state laws establishing separate public schools for black and white students to be unconstitutional, highlighting the inherent inequality in segregated systems.

Case Document 1 Filed 02/29/24 125 of 164 PageID #: 125

(1976), which establishes the criteria for what constitutes adequate due process, including the importance of notice and the opportunity to be heard[205].

**University of Louisiana at Lafayette's Indirect Liability and Cumulative Impact:**

The Defendant University of Louisiana at Lafayette's involvement in systemic issues leading up to and including the events of August 20, 2008, has indirectly contributed to the environment that facilitated the violations of Mr. O's constitutional rights. This ongoing pattern of misconduct, including inadequate oversight and training within its police department, underscores the Defendant University of Louisiana at Lafayette's role in the cumulative impact of these constitutional violations. The indirect yet significant contribution of the University's actions and inactions over time necessitates accountability under 42 U.S.C. § 1983.

**Relevance of 42 U.S.C. § 1983:**

Count Twenty-Eight leverages 42 U.S.C. § 1983 to address the egregious violation of constitutional rights by a state entity, emphasizing the imperative for judicial scrutiny and appropriate redress for Mr. O. The inclusion of established legal precedents within the complaint reinforces the gravity of the misconduct and the essential need for upholding constitutional protections.

---

205 *See Mathews v. Eldridge*, 424 U.S. 319 (1976): Set forth the process for determining the specific dictates of due process, emphasizing the balance between the individual's interest and the government's interests.

Case Document 1 Filed 02/29/24 126 of 164 PageID #: 126

## COUNT TWENTY NINE

**Coercion and Violation of Due Process Rights under the Fifth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983 (Against Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On August 20, 2008, Mr. O was coerced and deprived of his due process and equal protection rights under the Fifth and Fourteenth Amendments by Defendant University of Louisiana at Lafayette, constituting actionable violations under 42 U.S.C. § 1983.

**Explanation with Legal Precedents:**

1. **Coercion:** Mr. O alleges coercive tactics by Defendant University of Louisiana at Lafayette designed to suppress his freedoms, violating due process rights. Such coercion is in direct contravention of principles upheld in *Lefkowitz v. Turley*, 414 U.S. 70 (1973), where the Supreme Court emphasized protections

Case Document 1 Filed 02/29/24 127 of 164 PageID #: 127

against coercive actions by the state that compel individuals to forgo their constitutional rights[206].

**2. Violation of Due Process:** The deprivation of Mr. O's rights without a fair and impartial process aligns with the violations outlined in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), which affirms the necessity of notice and an opportunity to respond when rights are at stake[207].

**3. Violation of Equal Protection:** Differential treatment by Defendant University of Louisiana at Lafayette invokes the equal protection clause, as elucidated in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), stressing that discriminatory actions by state entities are subject to scrutiny under the Fourteenth Amendment[208].

**4. Threat to Ruin Life:** This direct threat, as part of coercive tactics, underscores a severe violation of Mr. O's rights, reminiscent of the concerns addressed in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), where the Court highlighted the

---

206 *See Lefkowitz v. Turley*, 414 U.S. 70 (1973): Established the principle that the state cannot coerce individuals into waiving their constitutional rights.

207 *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985): Affirmed the right to due process includes the right to be heard before being deprived of any significant property interest.

208 *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985): Clarified the standards for assessing equal protection violations, particularly regarding discriminatory treatment.

Case Document 1 Filed 02/29/24 128 of 164 PageID #: 128

importance of safeguarding individual rights against undue governmental coercion[209].

**University of Louisiana at Lafayette's Indirect Liability and Cumulative Impact:** The Defendant University of Louisiana at Lafayette's actions and inactions over time, particularly in failing to address and correct systemic issues of coercion and rights violations, have indirectly contributed to a pattern of misconduct. This pattern underscores the Defendant University of Louisiana at Lafayette's role in the cumulative impact of constitutional violations against Mr. O, necessitating accountability under 42 U.S.C. § 1983.

## COUNT THIRTY - 8/21/2008 Arrest Prosecution
## False Arrest and Violation of Fourth Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983
## (Against Defendant District Attorney's Office and Defendant ADA Landry)

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

209 *See Hamdi v. Rumsfeld*, 542 U.S. 507 (2004): Highlighted the importance of due process rights even in the context of national security and governmental authority.

Case Document 1 Filed 02/29/24 129 of 164 PageID #: 129

**Relevance of 42 U.S.C. § 1983:**

This count seeks redress under 42 U.S.C. § 1983 for the constitutional violations perpetrated by the Defendant District Attorney's Office and Defendant ADA Landry, specifically targeting the false arrest and violation of Mr. O's Fourth Amendment rights.

**Explanation with Legal Precedents:**

**1. False Arrest**: Mr. O's allegation of unlawful detention without legal justification directly challenges the Fourth Amendment's safeguard against unreasonable seizures. The precedent in *Dunaway v. New York*, 442 U.S. 200 (1979), emphasizes that detentions must be supported by probable cause, underscoring the illegality of Mr. O's arrest without sufficient grounds[210].

**2. Violation of Fourth Amendment Rights:** The assertion that Mr. O's arrest did not meet constitutional standards is grounded in the principles established in *Terry v. Ohio*, 392 U.S. 1 (1968), which delineates the conditions under which a person may be stopped and frisked by law enforcement, requiring reasonable suspicion[211].

---

210 *See Dunaway v. New York*, 442 U.S. 200 (1979): Clarifies the requirement of probable cause for arrest.

211 *See Terry v. Ohio*, 392 U.S. 1 (1968): Sets the standard for stop-and-frisk by law enforcement.

Case Document 1 Filed 02/29/24 130 of 164 PageID #: 130

**Liability of the District Attorney's Office:**

- **Failure to Properly Investigate:** The lack of adequate investigation by the District Attorney's Office aligns with concerns raised in *Brady v. Maryland*, 373 U.S. 83 (1963), where the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process[212].

- **Prosecutorial Misconduct:** The allegations of prosecutorial misconduct, including pressing charges without sufficient evidence, reflect the issues highlighted in *Connick v. Thompson*, 563 U.S. 51 (2011), discussing the responsibilities of the prosecutor's office to train its personnel to recognize and avoid constitutional violations[213].

- **Failure to Ensure Due Process:** The neglect to ensure due process rights mirrors the violation discussed in *Gideon v. Wainwright*, 372 U.S. 335 (1963), which guarantees the right to counsel as a fundamental aspect of a fair trial[214].

---

212 *See Brady v. Maryland*, 373 U.S. 83 (1963): Establishes the obligation of the prosecution to disclose evidence favorable to the defendant.

213 *See Connick v. Thompson*, 563 U.S. 51 (2011): Addresses prosecutorial accountability in training to prevent constitutional violations.

214 *See Gideon v. Wainwright*, 372 U.S. 335 (1963): Affirms the right to counsel as essential for due process.

Case Document 1 Filed 02/29/24 131 of 164 PageID #: 131

- **Supervisory Liability:** Supervisory liability for failing to train or supervise staff is articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), establishing that a municipality can be liable under § 1983 when a constitutional violation results from an official policy or custom[215].

This detailed count, grounded in established legal precedents, not only strengthens Mr. O's legal argument but also underscores the necessity for accountability and remedy for the alleged constitutional violations within the jurisdiction of the 5th Circuit Western District Court of Louisiana.

## COUNT THIRTY ONE
**Prosecutorial Negligence and Failure to Address Police Misconduct In Relation to 4/18/2021 Arrest Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant District Attorney's Office, Defendant Landry, Defendant Haynes)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

215 *See Monell v. Department of Social Services*, 436 U.S. 658 (1978): Defines conditions under which a municipality is liable under § 1983.

Case Document 1 Filed 02/29/24 132 of 164 PageID #: 132

Mr. O asserts that the Defendant District Attorney's Office, and specifically Defendants Landry and Haynes, negligently failed to address police misconduct, which contributed to a violation of his due process rights under the Fourteenth Amendment, contravening 42 U.S.C. § 1983.

**Explanation with Legal Precedents:**

1. **Negligence and Prosecutorial Responsibility:** The negligence of the District Attorney's Office in failing to investigate and address police misconduct aligns with the principles outlined in *Connick v. Thompson*, 563 U.S. 51 (2011), where the Supreme Court emphasized the responsibility of the prosecutor's office to prevent violations of constitutional rights through adequate training and oversight[216].

2. **Failure to Address Police Misconduct:** The failure to prosecute or discipline police officers for providing unauthorized legal advice and contributing to false arrests reflects a disregard for the prosecutorial duty to ensure justice. This is illuminated by *Imbler v. Pachtman*, 424 U.S. 409 (1976), which discusses the

216 *See Connick v. Thompson*, 563 U.S. 51 (2011): Clarifies the responsibility of the prosecutor's office to prevent constitutional violations.

Case Document 1 Filed 02/29/24 133 of 164 PageID #: 133

scope of prosecutorial immunity and the ethical obligations of prosecutors to the justice system[217].

**3. Contributing Factor to Subsequent Events:** The inaction of the District Attorney's Office in the face of evident police misconduct serves as a significant contributing factor to the subsequent violations experienced by Mr. O, demonstrating a failure in the system meant to protect citizens' rights. This situation is akin to the issues presented in *Kyles v. Whitley*, 514 U.S. 419 (1995), which addressed the consequences of prosecutorial negligence in the context of wrongful conviction[218].

**Liability and Accountability:**

- The negligence of the District Attorney's Office and its representatives, Defendant Landry and Defendant Haynes, in failing to address police misconduct, not only exacerbated the challenges faced by Mr. O but also underscored a systemic failure to uphold due process and equal protection under the law. This count seeks to establish the accountability of the prosecutor's office for its role in perpetuating a cycle of injustice and harm.

---

217 *See Imbler v. Pachtman*, 424 U.S. 409 (1976): Discusses prosecutorial immunity in the context of ethical obligations.

218 *See Kyles v. Whitley*, 514 U.S. 419 (1995): Highlights the impact of prosecutorial negligence on wrongful convictions.

Case Document 1 Filed 02/29/24 134 of 164 PageID #: 134

**COUNT THIRTY TWO**
**4/18/2021 Arrest Prosecution**
**Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant District Attorney's Office, Defendant Landry, Defendant Haynes)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Mr. O asserts that Defendant District Attorney's Office, through actions of Defendant Landry and Defendant Haynes, egregiously violated his due process rights under the Fourteenth Amendment during the legal proceedings stemming from his arrest on 4/18/2021, despite the ultimate dismissal of charges thanks to the efforts of his public defender and the provision of exculpatory evidence.

**Explanation with Legal Precedents:**

Case Document 1 Filed 02/29/24 135 of 164 PageID #: 135

**1. Violation of Due Process Despite Dismissal:** Despite the eventual dismissal of charges and the provision of exculpatory evidence to Mr. O, the initial failure to disclose this evidence in a timely manner and the pursuit of charges without probable cause constituted a violation of his due process rights. The principle outlined in *Brady v. Maryland*, 373 U.S. 83 (1963), requiring the disclosure of exculpatory evidence to ensure fairness, was momentarily disregarded, impacting the integrity of Mr. O's trial process[219].

**2. Prosecutorial Misconduct and Its Remediation:** The prosecutorial misconduct in failing to disclose crucial evidence promptly and pressing charges without sufficient basis challenges the fairness of the legal process. However, the actions taken by Mr. O's public defender to secure a dismissal highlight the critical role of defense counsel in safeguarding constitutional rights, as emphasized in *Gideon v. Wainwright*, 372 U.S. 335 (1963)[220].

**3. The Importance of Due Process in Legal Proceedings:** The circumstances surrounding Mr. O's prosecution underscore the essential nature of due process

219 *See Brady v. Maryland*, 373 U.S. 83 (1963): Establishes the prosecution's duty to disclose exculpatory evidence.

220 *See Gideon v. Wainwright*, 372 U.S. 335 (1963): Affirms the right to counsel as fundamental and essential to a fair trial.

Case Document 1 Filed 02/29/24 136 of 164 PageID #: 136

rights, as delineated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which mandates fair procedures to protect individuals' rights[221].

**Liability and Legal Implications:**

- Despite the resolution in Mr. O's favor, the Defendant District Attorney's Office's initial actions, facilitated by Defendant Landry and Defendant Haynes, underscore a significant breach of due process obligations. This breach, while rectified through legal advocacy, necessitates accountability under 42 U.S.C. § 1983 to prevent future violations and ensure adherence to constitutional standards.

**COUNT THIRTY THREE - 1/9/2022 Arrest Prosecution
Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983
(Against Defendant District Attorney's Office, Defendant Landry, Defendant Austin, and Defendant Richard)**

Mr. O emphasizes the entirety of allegations previously laid out, asserting that the prosecutorial actions by Defendants notably violated his constitutional rights, leading to a malicious prosecution devoid of probable cause, compounded by undue pressure to accept guilt for an event lacking substantive legal grounding.

221 *See Mathews v. Eldridge*, 424 U.S. 319 (1976): Sets forth the criteria for what constitutes adequate due process in administrative proceedings.

Case Document 1 Filed 02/29/24 137 of 164 PageID #: 137

**Explanation with Legal Precedents:**

**1. Malicious Prosecution and Due Process Violation:** Defendants pursued charges absent probable cause, embodying a clear due process violation under the Fourteenth Amendment. *Albright v. Oliver*, 510 U.S. 266 (1994), elucidates the protections against such prosecutorial overreach, emphasizing due process rights[222].

**2. Undue Pressure to Plead Guilty:** The coercion by Defendant Richard, representing a breach of Mr. O's right to a fair defense, echoes concerns raised in *Missouri v. Frye*, 566 U.S. 134 (2012), where the Supreme Court highlighted the critical nature of plea bargaining in respecting constitutional rights[223].

**3. Systemic Misconduct and 42 U.S.C. § 1983 Liability:** The pattern of behavior by Defendants, indicative of a broader systemic issue within the District Attorney's Office, invites scrutiny under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), allowing for liability when a policy or custom results in constitutional infringements[224].

---

222 See *Albright v. Oliver*, 510 U.S. 266 (1994): Clarifies malicious prosecution within the scope of the Fourteenth Amendment's due process clause, reinforcing the necessity of probable cause.

223 See *Missouri v. Frye*, 566 U.S. 134 (2012): Affirms the right to competent legal counsel during plea negotiations, underscoring the due process implications of coercive plea bargaining.

224 See *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Establishes the framework for municipal liability under 42 U.S.C. § 1983, pivotal for addressing systemic patterns of misconduct.

Case Document 1 Filed 02/29/24 138 of 164 PageID #: 138

**COUNT THIRTY FOUR 3/29/2022 Arrest Prosecution**
**Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant District Attorney's Office, Defendant Landry, and Defendant Richard )**

Mr. O emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

On February 23, 2024, the Defendant District Attorney's Office, represented by ADA Defendant Richard, intends to prosecute Mr. O for an arrest lacking probable cause. This prosecution directly contravened Mr. O's constitutional rights under the Fourteenth Amendment, which safeguards against deprivations of life, liberty, or property without due process of law[225]. Despite the absence of probable cause, ADA Defendant Richard and the Defendant District Attorney's Office proceeded with legal proceedings against Mr. O, causing him unwarranted harm and distress.

The initiation of legal action without sufficient evidence or justification constitutes a violation of Mr. O's rights, further compounded by the fact that he had previously been coerced into pleading guilty to an arrest without proper

225 The Fourteenth Amendment to the United States Constitution provides for due process protections, ensuring that no individual is deprived of life, liberty, or property without due process of law.

Case Document 1 Filed 02/29/24 139 of 164 PageID #: 139

basis. ADA Defendant Richard's persistence in prosecuting Mr. O despite the questionable circumstances surrounding the arrest demonstrates a disregard for Mr. O's rights and suggests a pattern of misconduct. As a result, Mr. O seeks redress and remedies for these egregious violations of his constitutional rights under federal law.

**Legal Precedents:**

- *Albright v. Oliver*, 510 U.S. 266 (1994), clarifies the protections offered by the Fourteenth Amendment's Due Process Clause against deprivation of liberty without due process of law, relevant to Mr. O's allegations of prosecution without probable cause[226].

- *Brady v. Maryland*, 373 U.S. 83 (1963), establishes the requirement for the prosecution to disclose exculpatory evidence, critical in ensuring the due process rights of the accused. This precedent may strengthen Mr. O's position if evidence was withheld or if the prosecution proceeded despite a lack of evidence[227].

[226] See *Albright v. Oliver* emphasizes the critical nature of due process in the context of liberty deprivations, making it especially pertinent to cases of prosecution without probable cause.

[227] See Brady v. Maryland sets a fundamental precedent for the disclosure of exculpatory evidence, safeguarding the accused's right to a fair trial.

Case Document 1 Filed 02/29/24 140 of 164 PageID #: 140

- *Malley v. Briggs*, 475 U.S. 335 (1986), addresses the liability of law enforcement officers for causing a plaintiff to be unconstitutionally arrested by presenting a judge with a complaint and an affidavit that fail to establish probable cause. This case underscores the importance of probable cause in arrests and prosecutions[228].

**<u>COUNT THIRTY FIVE - 9/3/2022 Arrest Prosecution</u>**
**Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant District Attorney's Office, Defendant Landry, and Defendant Pardo)**

Mr. O emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On September 3, 2022, within the jurisdiction of the 5th Circuit Court, Western District of Louisiana, Plaintiff Mr. O was subjected to an unlawful arrest, leading to a prosecution that violated his due process rights under the Fourteenth Amendment to the U.S. Constitution[229]. This unjust action demanded Mr. O to

228 *See Malley v. Briggs* highlights the necessity of establishing probable cause for arrests, offering protection against arbitrary legal actions.

229 Due Process Clause of the Fourteenth Amendment - Ensures no person is deprived of life, liberty, or property without due process of law.

Case Document 1 Filed 02/29/24 141 of 164 PageID #: 141

endure anger management and pay fines, despite the conspicuous absence of sufficient evidence or probable cause.

**Explanation with Legal Precedents:**

**1. Unjust Prosecution:** The prosecution, spearheaded by Defendant District Attorney's Office, City District Attorney Defendant Landry, and Defendant Pardo, pursued charges against Mr. O devoid of substantial evidence or justification, infringing upon his due process rights. This action reflects a breach of the principles enshrined in *Gideon v. Wainwright*, 372 U.S. 335 (1963), which underscores the constitutional right to a fair trial and the necessity of sufficient evidence for prosecution[230].

**2. Requirement for Anger Management:** The imposition of anger management classes on Mr. O, without a legitimate basis, further aggravated the violation of his constitutional rights. This compulsion illustrates a disregard for the protections offered by *Mathews v. Eldridge*, 424 U.S. 319 (1976), which delineates the criteria for what constitutes due process, including the importance of evidence in imposing legal penalties[231].

---

230 *See Gideon v. Wainwright*, 372 U.S. 335 (1963) - Affirms the right to a fair trial and adequate evidence for prosecution.

231 *See Mathews v. Eldridge*, 424 U.S. 319 (1976) - Outlines the requirements for procedural due process, emphasizing the role of evidence in judicial processes.

Case Document 1 Filed 02/29/24 142 of 164 PageID #: 142

**Seeking Redress:**

Mr. O seeks judicial intervention for the violation of his due process rights as guaranteed by the Fourteenth Amendment. He advocates for remedies to rectify the unjust prosecution and the consequent adversities he faced, emphasizing the need for injunctive relief, compensatory damages, and measures to avert similar future injustices.

**COUNT THIRTY SIX**
**Violation of Due Process Rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant University of Louisiana at Lafayette Officials)**

**Allegation:**

Shortly after the incident on August 21, 2008, Plaintiff Mr. O faced a violation of his due process rights by Defendant University of Louisiana at Lafayette Officials. The university officials engaged in discussions regarding Mr. O's potential expulsion with his father, excluding Mr. O from the process and depriving him of essential due process protections[232].

[232] Due Process Clause of the Fourteenth Amendment - Ensures no person is deprived of life, liberty, or property without due process of law.

Case Document 1 Filed 02/29/24 143 of 164 PageID #: 143

**Explanation with Legal Precedents:**

Defendant University of Louisiana at Lafayette officials' exclusion of Mr. O from discussions about his potential expulsion directly contravened his Fourteenth Amendment rights, which mandate due process protections, including the right to notice and an opportunity to be heard, before significant disciplinary actions are taken[233]. The absence of Mr. O in these crucial discussions not only deprived him of the chance to defend himself but also signifies a glaring oversight in the university's adherence to due process standards.

**Legal Precedents to Strengthen Mr. O's Complaint:**

1. *Goss v. Lopez*, 419 U.S. 565 (1975): Establishes the requirement for public schools to provide students with notice and an opportunity to be heard before imposing suspensions or expulsions, emphasizing the necessity of due process in educational settings[234].

2. *Board of Regents v. Roth*, 408 U.S. 564 (1972): Clarifies the scope of due process protections for individuals facing deprivation of liberty or property

233 *See Board of Regents v. Roth*, 408 U.S. 564 (1972) - Affirms the necessity of due process in matters affecting significant interests.

234 *See Goss v. Lopez*, 419 U.S. 565 (1975) - Mandates due process protections in the educational context.

Case Document 1 Filed 02/29/24 144 of 164 PageID #: 144

interests, pertinent to Mr. O's situation where his educational pursuits were at stake[235].

3. *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961): The Fifth Circuit Court underscored the importance of due process in university disciplinary proceedings, setting a precedent for the involvement of the accused in disciplinary processes[236].

**Seeking Redress:**

Mr. O seeks judicial intervention to address the violation of his due process rights as guaranteed by the Fourteenth Amendment. He advocates for remedies to rectify the unjust exclusion from the expulsion discussions and the consequential impacts on his educational and personal life.

## COUNT THIRTY SEVEN - 11/3/2021 PERMANENT INJUNCTION

**Violation of Due Process Rights and First Amendment Rights under the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant Latisser, Defendant Payne, Defendant Lafayette Police Department, Defendant City of Lafayette, and Defendant University of Louisiana at Lafayette)**

235 *Ibid.*

236 *See Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961) - Emphasizes the importance of due process in university disciplinary proceedings.

Case Document 1 Filed 02/29/24 145 of 164 PageID #: 145

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On April 18, 2021, Defendant Officer Defendant Latisser and Officer Defendant Payne, unlawfully provided legal advice to Plaintiff Mr. O's neighbor, leading to a Temporary Restraining Order (TRO) against Mr. O, and ultimately, a permanent injunction on November 3, 2021, without affording him due process[237].

**Explanation with Legal Precedents:**

**1. Violation of First Amendment Rights:** The issuance of a TRO and subsequent permanent injunction against Mr. O significantly restricted his freedom of speech and expression, foundational rights protected under the First Amendment. The case of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), underscores the

237 The issuance of a TRO and subsequent permanent injunction without due process illustrates a failure to adhere to the principles established in Mathews v. Eldridge, 424 U.S. 319 (1976), which mandates notice and an opportunity to be heard.

Case Document 1 Filed 02/29/24 146 of 164 PageID #: 146

importance of protecting free speech, particularly in the context of legal actions that may serve to silence individuals[238].

**2. Violation of Due Process Rights:** The process leading to the permanent injunction failed to provide Mr. O with a fair opportunity to contest the allegations against him, violating his Fourteenth Amendment rights. The landmark decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976), establishes the criteria for what constitutes adequate due process, emphasizing the necessity of notice and the opportunity to be heard[239].

**Relevance to 42 U.S.C. § 1983:**

The actions of Defendant Officer Latisser, Officer Payne, and Defendant City Officials, in this case, directly infringed upon Mr. O's rights under the First and Fourteenth Amendments. These constitutional violations fall within the scope of 42 U.S.C. § 1983, offering Mr. O a mechanism to seek redress for the deprivation of federally protected rights[240].

**COUNT THIRTY EIGHT - December 31, 2021**
**Court Ordered Psychological Evaluation**

238 *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), highlights the critical role of the First Amendment in protecting free speech against legal actions that may have a chilling effect.

239 *See Mathews v. Eldridge*, 424 U.S. 319 (1976), provides a framework for assessing the adequacy of due process in administrative and legal proceedings.

240 42 U.S.C. § 1983 serves as a critical tool for individuals seeking to address violations of constitutional rights by state actors.

Case Document 1 Filed 02/29/24 147 of 164 PageID #: 147

**Violation of Due Process Rights and Privacy Regarding Court-Ordered Psychological Evaluation under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against District Court, Defendant Latisser, Defendant Payne, Defendant Lafayette Police Department, Defendant City of Lafayette, Defendant University of Louisiana at Lafayette)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On November 3, 2021, Mr. O was subjected to a court-ordered psychological evaluation as a condition of the injunction, stemming from actions leading to a Temporary Restraining Order (TRO) by Officer Defendant Latisser and Officer Defendant Payne[241].

**Explanation with Legal Precedents:**

**- Violation of Due Process Rights:** The court-ordered psychological evaluation, mandated without Mr. O's consent or consideration for his objection, constitutes

241 The imposition of a court-ordered psychological evaluation without adequate due process and consideration of privacy rights raises concerns under the Fourteenth Amendment.

Case Document 1 Filed 02/29/24 148 of 164 PageID #: 148

a potential infringement of his due process rights as protected under the Fourteenth Amendment[242]. The case of Washington v. Harper, 494 U.S. 210 (1990), supports the principle that individuals have a right to refuse medical treatment, extending to psychological evaluations, under certain circumstances, highlighting the importance of due process in such interventions[243].

- **Privacy Concerns:** The mandated psychological evaluation raises significant privacy concerns, potentially violating Mr. O's right to privacy under the Fourteenth Amendment. In *Whalen v. Roe*, 429 U.S. 589 (1977), the Supreme Court recognized the individual's interest in avoiding disclosure of personal matters, emphasizing the need for balancing state interests with individual privacy rights[244].

**Relevance to 42 U.S.C. § 1983:**

This count seeks to address the potential violations of constitutional rights associated with the court-ordered psychological evaluation. Given the direct involvement of state actors, including the District Court and law enforcement

242 *See Washington v. Harper*, 494 U.S. 210 (1990), emphasizes the need for due process in medical treatment decisions, applicable to psychological evaluations.

243 *Ibid.*

244 *See Whalen v. Roe*, 429 U.S. 589 (1977), underscores the protection of individual privacy rights against unwarranted governmental intrusion.

Case Document 1 Filed 02/29/24 149 of 164 PageID #: 149

officers, in these actions, 42 U.S.C. § 1983 provides a legal basis for Mr. O to seek redress for the infringement of his rights[245].

**COUNT THIRTY NINE**

**Retaliation for Exercising First Amendment Rights in violation of 42 U.S.C. § 1983**

**(Against Defendant Lafayette Consolidated Government)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Mr. O alleges that Defendant Lafayette Consolidated Government, acting through its representatives, has engaged in retaliation against him for utilizing his First Amendment rights, a direct violation of 42 U.S.C. § 1983[246].

**Explanation with Legal Precedents:**

- **Retaliation for Exercising First Amendment Rights:** Mr. O claims that actions taken by the Lafayette Consolidated Government's agents were aimed at

[245] 42 U.S.C. § 1983 serves as a mechanism for individuals to challenge violations of constitutional rights by state actors.

[246] 42 U.S.C. § 1983 serves as a mechanism for individuals to challenge violations of constitutional rights by state actors.

Case Document 1 Filed 02/29/24 150 of 164 PageID #: 150

penalizing his engagement in protected speech and activity. This claim is supported by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), where the Supreme Court established a framework for determining when an employee's First Amendment rights have been violated due to retaliation[247]. This framework requires showing that the protected conduct was a substantial or motivating factor in the retaliatory action.

- **Violation of First Amendment Rights Under 42 U.S.C. § 1983:** The retaliation faced by Mr. O for expressing grievances and seeking redress aligns with *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which discusses the balance between the interests of a citizen, in commenting upon matters of public concern, and the government's interest in promoting the efficiency of the public services it performs through its employees[248]. Although *Garcetti* dealt with public employment, its principles are broadly applicable to situations where government actions can chill the exercise of First Amendment rights.

- **Legal Recourse Under 42 U.S.C. § 1983:** The conduct attributed to Defendant Lafayette Consolidated Government, as described, invokes the remedial measures available under 42 U.S.C. § 1983 for violations of constitutional rights.

247 See *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977) - Establishes the test for retaliation against First Amendment rights.

248 See *Garcetti v. Ceballos*, 547 U.S. 410 (2006) - Addresses the protection of speech by government employees under the First Amendment.

Case Document 1 Filed 02/29/24 151 of 164 PageID #: 151

The case of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), further clarifies that a municipality can be liable under § 1983 when the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[249].

**COUNT FORTY**
**Supervisory Liability in violation of 42 U.S.C. § 1983**
**(Against Defendant Lafayette Consolidated Government)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

Mr. O alleges that Defendant Lafayette Consolidated Government, in its supervisory role, is responsible for systemic failures that led to the violation of his constitutional rights, invoking 42 U.S.C. § 1983[250].

[249] *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Sets the standard for municipal liability under 42 U.S.C. § 1983.

[250] *42 U.S.C. § 1983*: A pivotal federal statute in civil rights law that enables individuals to file lawsuits in federal court against state and local government officials and entities for violations of their constitutional rights. This law serves as a crucial mechanism for holding public officials accountable for actions performed under "color of state law" that infringe upon the rights guaranteed by the Constitution and federal law.

Case Document 1 Filed 02/29/24 152 of 164 PageID #: 152

**Explanation with Legal Precedents:**

- **Failure to Adequately Train and Supervise:** The Lafayette Consolidated Government's failure to train and supervise its employees is a direct cause of the constitutional violations suffered by Mr. O. This claim is supported by *City of Canton v. Harris*, 489 U.S. 378 (1989), which established that a municipality can be found liable under § 1983 when a failure to train its employees amounts to "deliberate indifference" to the rights of persons with whom the police come into contact[251].

- **Failure to Enforce Policies and Procedures:** The lack of enforcement of policies and procedures aimed at protecting constitutional rights is further evidence of the Lafayette Consolidated Government's liability. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), clarifies that a municipality can be liable for constitutional violations resulting from its policies, practices, or lack of action[252].

251 *See City of Canton v. Harris*, 489 U.S. 378 (1989) - Establishes the legal basis for municipal liability due to failure to train.

252 *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Sets the precedent for municipal liability under § 1983 for policy-driven violations of constitutional rights.

Case Document 1 Filed 02/29/24 153 of 164 PageID #: 153

**- Tolerating a Pattern of Misconduct:** The Lafayette Consolidated Government's tolerance of a pattern of misconduct implicates it in the repeated violations of Mr. O's rights. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), discusses the requirements for establishing municipal liability based on a pattern or policy that results in constitutional violations[253].

**COUNT FORTY ONE - 10/25/2020**
**Negligence, Violation of Fourth Amendment Rights, Cruel and Unusual Punishment, and Violation of FAA Guidelines under the U.S. Constitution in violation of 42 U.S.C. § 1983**
**(Against Defendant U.S. Air Force, Defendant FAA, and Defendant United States Air Force's 910th Airlift Wing)**

Mr. O (hereinafter referred to as "Mr. O") emphatically reiterates and reaffirms every single allegation presented in the preceding paragraphs of this Complaint, incorporating them herein as if they were fully articulated in this section of the pleading.

**Allegation:**

On or around October 25, 2020, within the jurisdiction of the 5th Circuit Court, Western District of Louisiana, Plaintiff Mr. O was subjected to negligence, violations of his Fourth Amendment rights, cruel and unusual punishment, and violations of FAA guidelines during an incident involving a C-130 Hercules

253 *See Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) - Provides insight into the establishment of municipal liability based on a pattern of misconduct.

Case Document 1 Filed 02/29/24 154 of 164 PageID #: 154

mosquito-spraying operation conducted by Defendant U.S. Air Force, Defendant FAA, and Defendant United States Air Force's 910th Airlift Wing, all acting under color of state law. These actions constitute violations of 42 U.S.C. § 1983.

**Explanation:**

**1. Negligence:** Plaintiff Mr. O alleges that on the aforementioned date, Defendant U.S. Air Force, Defendant FAA, and Defendant United States Air Force's 910th Airlift Wing conducted a mosquito-spraying operation that resulted in harmful exposure to harmful chemicals and pesticides. This operation was carried out negligently, without adequate safety measures, and without proper notification to residents like Mr. O. As a result, Mr. O suffered physical harm, emotional distress, and property damage due to their negligent actions.

**2. Violation of Fourth Amendment Rights:** Mr. O further contends that the actions of Defendant U.S. Air Force, Defendant FAA, and Defendant United States Air Force's 910th Airlift Wing constituted an unreasonable search and seizure in violation of his Fourth Amendment rights. The mosquito-spraying operation, conducted without proper notification and consent, intruded upon Mr. O's privacy and infringed upon his right to be free from unreasonable searches and seizures.

Case Document 1 Filed 02/29/24 155 of 164 PageID #: 155

**3. Cruel and Unusual Punishment:** Mr. O asserts that the exposure to harmful chemicals and pesticides during the mosquito-spraying operation amounted to cruel and unusual punishment. The deliberate indifference to the health and safety of residents like Mr. O, as exhibited by Defendants, subjected him to unnecessary physical and emotional suffering, which constitutes a violation of his Eighth Amendment rights.

**4. Violation of FAA Guidelines:** Mr. O contends that the C-130 Hercules mosquito-spraying operation was conducted in violation of FAA guidelines, which specify minimum altitudes and safety measures for such operations. The plane involved in the operation flew directly above Mr. O, disregarding these guidelines and endangering his safety and well-being.

**Relevance of 42 U.S.C. § 1983:**

42 U.S.C. § 1983 empowers individuals to seek legal remedies when their constitutional rights are infringed upon by individuals acting under the authority of state law. In Count Forty One, Mr. O alleges that Defendant U.S. Air Force, Defendant FAA, and Defendant United States Air Force's 910th Airlift Wing violated his Fourth Amendment rights, engaged in negligence, subjected him to cruel and unusual punishment, and violated FAA guidelines during the mosquito-

Case Document 1 Filed 02/29/24 156 of 164 PageID #: 156

spraying operation on October 25, 2020, within the jurisdiction of the 5th Circuit Court, Western District of Louisiana.

**COUNT FORTY TWO - PATTERN OF PRACTICE**
**Officer Defendant K. Hardy's Subsequent Appearances and Potential Cover-Up, and Pattern of Practice**
**(Against Defendant University of Louisiana at Lafayette Police Department, Defendant University of Louisiana at Lafayette, Defendant Lafayette Consolidated Government, Defendant Lafayette Police Department, and Defendant District Attorney's Office)**

**Allegation:**

Plaintiff Mr. O alleges that Officer Defendant K. Hardy engaged in a pattern of practice aimed at covering up prior mistakes or misconduct by unlawfully detaining Mr. O on multiple occasions. This pattern of behavior demonstrates a deliberate and calculated effort by Officer Hardy to evade accountability and perpetuate unlawful actions, constituting a violation of 42 U.S.C. § 1983.

**Explanation with Legal Precedents:**

**1. Initial Illegal Detention and Subsequent Cover-Up:** Officer Defendant K. Hardy's actions, beginning with the unlawful detention of Mr. O without probable cause, followed by attempts to justify these actions in subsequent encounters, constitute a clear abuse of authority. This pattern of conduct reflects a systemic issue within the Defendant University of Louisiana at Lafayette Police

Case Document 1 Filed 02/29/24 157 of 164 PageID #: 157

Department, raising concerns under the doctrine established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which allows for liability of municipalities for constitutional violations resulting from their policies or customs[254].

**2. Lack of Accountability and Supervisory Liability:** The failure of the University of Louisiana at Lafayette Police Department, University of Louisiana at Lafayette, and Lafayette Consolidated Government to hold Officer K. Hardy accountable suggests a breakdown in supervisory responsibilities. *City of Canton v. Harris*, 489 U.S. 378 (1989), establishes that failure to train or supervise law enforcement personnel may result in municipal liability under § 1983 when it leads to violations of individuals' rights[255].

**3. Pattern of Misconduct:** The repeated, unlawful detentions perpetrated by Officer K. Hardy, under the apparent acquiescence or negligence of the University of Louisiana at Lafayette Police Department and Lafayette Consolidated Government, may indicate a pattern of misconduct. Such patterns could be addressed under the principles discussed in *Los Angeles County v.*

---

[254] See *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) - Establishes municipal liability under § 1983 for actions pursuant to official policy or custom.

[255] *See City of Canton v. Harris*, 489 U.S. 378 (1989) - Discusses municipal liability under § 1983 for failure to train or supervise.

Case Document 1 Filed 02/29/24 158 of 164 PageID #: 158

*Davis*, 440 U.S. 625 (1979), which concerns systemic practices that lead to constitutional violations[256].

**4. Impact on Mr. O:** The continuous cycle of misconduct and attempted cover-ups by Officer K. Hardy had profound implications for Mr. O, infringing upon his constitutional rights and causing significant harm. The relevance of this pattern to Mr. O's case is underscored by the principles laid out in Owen v. City of Independence, 445 U.S. 622 (1980), regarding the personal liability of government officials for actions taken under their authority that violate individuals' rights[257].

**COUNT FORTY-THREE**
**Pattern of Practice - Officer Defendant Latisser's Subsequent Appearances and Potential Cover-Up**
**(Against Defendant Lafayette Police Department, Defendant Lafayette Consolidated Government, Defendant District Attorney's Office)**

**Allegation:**

Plaintiff Mr. O asserts that Officer Defendant Latisser's repeated appearances and actions, particularly on 3/28/2022 and 3/29/2022, following incidents of previous misconduct, constitute not merely isolated events but part of a broader, troubling pattern of practice within the Defendant Lafayette Police Department.

256 *See Los Angeles County v. Davis*, 440 U.S. 625 (1979) - Addresses systemic practices leading to constitutional violations.

257 *See Owen v. City of Independence*, 445 U.S. 622 (1980) - Pertains to the personal liability of government officials for constitutional violations.

Case Document 1 Filed 02/29/24 159 of 164 PageID #: 159

These patterns not only underscore a potential cover-up but also highlight systemic failures that have directly infringed upon Mr. O's constitutional rights under 42 U.S.C. § 1983.

**Explanation:**

**1. Continued Misconduct and Potential Cover-Up:** Officer Defendant Latisser's persistent involvement in cases against Mr. O, especially after allegations of misconduct, strongly suggests a deliberate attempt to cover up previous wrongdoings or to intimidate Mr. O into silence, thereby violating his constitutional rights[258].

**2. Systemic Pattern of Practice:** The recurring misconduct by Officer Defendant Latisser, coupled with similar behavior from other officers within the Defendant Lafayette Police Department, indicates a systemic pattern of practice that tolerates, if not encourages, constitutional violations against civilians[259].

**3. Liability of Defendant Lafayette Consolidated Government and Defendant District Attorney's Office:** The failure of Defendant Lafayette Consolidated Government and Defendant District Attorney's Office to adequately address,

---

258 *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

259 *See Iqbal v. Hasty*, 556 U.S. 662 (2009)

Case Document 1 Filed 02/29/24 160 of 164 PageID #: 160

correct, or prevent these patterns of misconduct by Officer Defendant Latisser and other officers implicates these entities in the perpetuation of constitutional violations under the doctrine of supervisory and municipal liability[260].

**Legal Precedents:**

- ***Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978):** Established that local governing bodies can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[261].

- ***Iqbal v. Hasty*, 556 U.S. 662 (2009):** Further clarified the standard for holding government officials and entities liable under 42 U.S.C. § 1983, emphasizing the necessity of showing an intentional violation of rights through actions or inactions that are directly attributable to the defendant[262].

**Seeking Redress:**

260 *See City of Canton v. Harris*, 489 U.S. 378 (1989), elaborates on the requirements for establishing municipal liability under § 1983 based on failures to train or supervise.

261 *Ibid*. Monell.

262 *Ibid*. Iqbal.

Case Document 1 Filed 02/29/24 161 of 164 PageID #: 161

In Count Forty-Three, Mr. O seeks not only recognition of the patterns of misconduct and potential cover-up efforts by Officer Defendant Latisser but also accountability for the Defendant Lafayette Police Department, Defendant Lafayette Consolidated Government, and Defendant District Attorney's Office for their roles in enabling and perpetuating these constitutional violations. Mr. O calls for appropriate legal remedies, including but not limited to injunctive relief, compensatory and punitive damages, and the implementation of corrective measures to prevent future violations.

## X. PRAYER FOR RELIEF:

Wherefore, Plaintiff Mr. O, proceeding pro se, respectfully petitions this Honorable Court for a judgment against each Defendant, jointly and severally, for comprehensive relief for the violations of Mr. O's constitutional, statutory, and common-law rights, as detailed throughout this complaint. Specifically, Mr. O seeks:

1. **Compensatory Damages:** An award of compensatory damages in no amount less than $250,000,000, to redress the substantial physical, emotional, and financial harm endured by Mr. O due to the Defendants' actions. This includes,

Case Document 1 Filed 02/29/24 162 of 164 PageID #: 162

but is not limited to, damages for pain and suffering, lost wages, loss of earning capacity, and medical expenses[263].

**2. Punitive Damages:** Punitive damages in an amount sufficient to punish the Defendants for their egregious conduct and to deter similar future misconduct by them or others. This seeks to uphold the principle that violations of constitutional rights carry severe consequences[264].

**3. Special Damages:** Special damages to specifically address and compensate for the quantifiable financial losses directly stemming from the incidents detailed herein, including but not limited to, legal expenses incurred due to unwarranted legal actions and any property damage[265].

**4. Attorneys' Fees and Costs:** An award covering reasonable attorneys' fees and costs associated with bringing this action, as authorized by applicable statutes, acknowledging the substantial burden and expense borne by Mr. O in seeking justice[266].

---

263 *See Carey v. Piphus*, 435 U.S. 247 (1978): Establishes the availability of compensatory damages for violations of constitutional rights, even in the absence of physical injury.

264 *See Smith v. Wade*, 461 U.S. 30 (1983): Outlines the criteria for awarding punitive damages in § 1983 actions to deter and punish egregious misconduct.

265 *See Goss v. Lopez*, 419 U.S. 565 (1975): Highlights the importance of special damages for losses directly attributable to constitutional violations.

266 42 U.S.C. § 1988: Authorizes the award of attorneys' fees to the prevailing party in civil rights litigation.

Case Document 1 Filed 02/29/24 163 of 164 PageID #: 163

**5. Injunctive Relief:** A permanent injunction prohibiting the City of Lafayette, Louisiana, and its agents from imposing any restrictions on Mr. O's exercise of his First Amendment rights, ensuring protection against further constitutional infringements[267].

6. Further Relief: Any other relief that the Court deems just and equitable, including declaratory relief affirming the violation of Mr. O's rights and any injunctive relief necessary to prevent further violations, thus fully addressing the breadth of harm suffered by Mr. O and restoring his rights[268].

## XI. CONCLUSION:

In conclusion, Mr. O, through this action, seeks justice and comprehensive redress for the grievous violations of his constitutional rights and state law protections. The actions and inactions of the Defendants, as detailed herein, have inflicted profound physical, emotional, and financial harm on Mr. O, necessitating this Court's intervention. Mr. O implores this Honorable Court to recognize the severity of the Defendants' misconduct, to afford him the relief

[267] *See Elrod v. Burns*, 427 U.S. 347 (1976): Demonstrates the court's power to issue injunctions to prevent future violations of constitutional rights.

[268] *See Bell v. Hood*, 327 U.S. 678 (1946): Allows for further relief deemed just and proper by the court in civil rights cases.

Case Document 1 Filed 02/29/24 164 of 164 PageID #: 164

sought herein, and to ensure such egregious violations of fundamental rights are not perpetuated.

Respectfully submitted, this complaint articulates a plea for judicial scrutiny, accountability, and remedy. Mr. O entrusts his grievances to the wisdom and justice of the United States District Court for the Western District of Louisiana, earnestly requesting consideration and action to rectify the injustices endured.

Dated: February 29, 2024

Respectfully submitted,

*By:* [signature]

EDOSA ADDLEY FESTUS OGBEBOR
In Pro Per
edosaogbebor@icloud.com